IN THE MATTER OF THE ASSESSMENT OF ADDITIONAL NORTH CAROLINA AND ORANGE COUNTY USE TAXES AGAINST VILLAGE PUBLISHING CORPORATION FOR THE PERIOD FROM APRIL 1, 1972 THROUGH MARCH 31, 1978

No. 127PA84

(Filed 6 November 1984)

1. **Constitutional Law § 18; Taxation § 31— use tax—application to newspaper— no violation of free speech and free press**

Assuming arguendo that *The Village Advocate* is a newspaper, application of the use tax to *The Village Advocate* does not violate the Free Speech and Free Press clauses of the First Amendment to the U. S. Constitution since the tax is an economic regulation applied uniformly to all businesses, not just to the press.

2. **Constitutional Law § 20— equal protection—test applied**

When a classification created by a statute impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class, the "strict scrutiny" standard applies in determining whether the statute violates the Equal Protection Clause of the Federal Constitution and requires the government to demonstrate that the classification is necessary to promote a compelling government interest. When a statutory classification does not burden the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the government need only show that the classification in the challenged statute bears some rational relationship to a conceivable legitimate interest of government.

3. **Constitutional Law § 20; Taxation § 31— sales and use tax exemption—equal protection—rational basis standard**

The rational basis standard applied in determining whether a sales and use tax exemption statute violated the Equal Protection Clause of the U. S. Constitution.

In re Assessment of Taxes Against Village Publishing Corp.

**4. Taxation § 31.3— sales and use tax—exemption of certain newspaper sales—no violation of equal protection**

The sales and use tax exemption set forth in G.S. 105-164.13(28) for the sale of newspapers door-to-door by newsboys or by resident street vendors while all other newspapers distributed by other means are subject to either the sales or use tax bears a rational relationship to a legitimate governmental interest and does not violate the Equal Protection Clause of the U. S. Constitution. Nor does the classification created by the statute violate Art. V, § 2 of the N. C. Constitution which provides that "the power of taxation shall be exercised in a just and equitable manner."

ON discretionary review, pursuant to N.C.G.S. 7A-31(1), of the decision of the Court of Appeals, 66 N.C. App. 423, 311 S.E. 2d 366 (1984), affirming judgment for appellee, North Carolina Department of Revenue, by *Farmer, J.,* on 20 July 1982 in WAKE County Superior Court which judgment affirmed decisions of the North Carolina Secretary of Revenue and Tax Review Board also in favor of appellee.

*Thigpen & Hines, P.A., by James C. Smith, for petitioner appellant.*

*Rufus L. Edmisten, Attorney General, by George W. Boylan, Assistant Attorney General, for respondent appellee.*

EXUM, Justice.

The issue presented by this case is whether the imposition of a use tax under the North Carolina Sales and Use Tax Act, N.C.G.S. 105-164, *et seq.* (the Act), upon copies of a publication printed by Womack Press in Virginia from layouts submitted by appellant, Village Publishing Corporation, a North Carolina corporation, and sold by Womack to appellant for free distribution in North Carolina violates any of appellant's federal or state constitutional rights. We conclude that it does not for reasons which in part differ from those used by the Court of Appeals. Therefore, we modify and affirm.

I.

Appellant Village Publishing Corporation is engaged in the publishing and distribution of *The Village Advocate* (the *Advocate*), a weekly publication consisting primarily of commercial and classified advertisements. The *Advocate* also contains a limited number of other items, including school lunch menus,

sporting events schedules, community events calendars and announcements of local public interest. The publication's current circulation rate is approximately 24,000 copies, all of which are distributed free in the Chapel Hill-Carrboro area. Roughly 97 percent of these copies are delivered door-to-door by agents of the corporation with the remainder being distributed from racks scattered throughout the two cities.

During the period from 1 April 1972 through 31 March 1978, the *Advocate* was not printed by appellant. Rather, appellant provided layouts for the publication to Womack Press in Danville, Virginia, which printed the papers and then sold the finished product to appellant. During this period, appellant did not pay any sales or use tax on the purchase of this product from Womack Press, either in Virginia or in North Carolina.

On 12 June 1978, an auditor from the North Carolina Department of Revenue completed an examination of appellant's tax records for this period and concluded that appellant owed an additional tax, including penalty and interest, of $42,309.89 based on its transactions with Womack Press. Appellant objected to this proposed assessment to the Secretary of the Department of Revenue (the Secretary). Appellant contended: (1) the *Advocate* was a newspaper; (2) purchases of newsprint, ink and printing services by paid circulation newspapers were exempt from sales and use taxation by N.C.G.S. 105-164.13(28); and (3) that denial of a similar exemption to the *Advocate*, a free circulation publication, violated constitutional guarantees of freedom of speech and press, equal protection of the laws under the United States Constitution and the principle of equitable taxation under Article V, section 2 of the North Carolina Constitution.

Following an 11 November 1980 hearing, the Secretary issued a decision upholding the additional tax assessment. The Secretary concluded: (1) The *Advocate* is not a newspaper within the meaning of the statute but is an "advertising circular." (2) No statutory authority exists for exempting advertising circulars from taxation. (3) Even if the *Advocate* were a newspaper, it would not escape taxation since the statute exempts only paid circulation and not free circulation publications. (4) The Secretary has no authority to decide appellant's constitutional objections.

Appellant then sought administrative review of this ruling from the North Carolina Tax Review Board (the Board) pursuant to N.C.G.S. 105-241.2. The Board on 2 June 1981 adopted the conclusions of the Secretary and affirmed his decision. Appellant paid the tax on 21 August 1981 and petitioned for judicial review in Wake County Superior Court pursuant to N.C.G.S. 150A-43, again asserting its constitutional objections to the tax. Following a hearing on 20 July 1982, Judge Farmer entered judgment affirming the decision of the Board.

On appeal the North Carolina Court of Appeals concluded: (1) the *Advocate* is not a newspaper and (2) appellant's First Amendment rights are not violated by a tax which is applicable to all persons who use, consume, distribute or store for use or consumption tangible personal property in this state.

II.

We begin with an examination of the Act before addressing the parties' contentions about it.

Generally the Act, with certain exceptions and in pertinent part, imposes upon persons engaged in the business of selling tangible personal property at retail in this state a state sales tax at a rate of three percent of the sales price of each item sold. N.C.G.S. 105-164.4. The Act also imposes a complementary state use tax "upon the storage, use or consumption in this state of tangible personal property purchased within and without this state for storage, use or consumption within this state" at a rate of three percent of the cost of such property "when the same is not sold but used, consumed, distributed or stored for use or consumption in this State. . . ." N.C.G.S. 105-164.6.[1]

The purpose of North Carolina's sales and use tax is twofold. The primary purpose is, of course, to generate revenue for the state. N.C.G.S. 105-164.2. The sales tax is, in effect, a tax imposed upon the retail merchant as a privilege tax for the right to engage in that business. *Piedmont Canteen Service, Inc. v. Johnson,* 256 N.C. 155, 123 S.E. 2d 582 (1962). The tax is, however, designed

---

1. Parallel sales and use tax provisions appear in the Local Government Sales and Use Tax Act, N.C.G.S. 105-463, *et seq.* Since the same principles apply to both acts, we shall limit our discussion to the North Carolina Sales and Use Tax Act.

to be passed on to the consumer. N.C.G.S. 105-164.7; *Manufacturing Co. v. Johnson*, 264 N.C. 12, 140 S.E. 2d 744 (1965).

The second purpose of the sales and use tax scheme is to equalize the tax burden on all state residents. This is achieved through imposition of the use tax in certain situations where the sales tax is not applicable. The sales tax cannot constitutionally be imposed upon interstate sales since it would then be a tax upon the privilege of doing interstate business, and would constitute a burden upon interstate commerce in violation of the Commerce Clause of the United States Constitution. *Atwater-Waynick Hosiery Mills, Inc. v. Clayton*, 268 N.C. 673, 151 S.E. 2d 574 (1966). Imposing a tax upon the retail sale of goods within the state without imposing a complementing tax on the in-state use of goods purchased outside the state might encourage North Carolina residents to shop in other. states to avoid paying North Carolina sales tax. Therefore, the Act imposes a use tax on items purchased outside the state and thus not subject to sales tax, which are brought into the state for "storage, use or consumption" here. "Its chief function is to prevent the evasion of a sales tax by persons purchasing tangible personal property outside of North Carolina for storage, use or consumption within the state." *Johnston v. Gill*, 224 N.C. 638, 643-44, 32 S.E. 2d 30, 33 (1944).

The use tax also removes, "insofar as possible, the discrimination against local merchants resulting from the imposition of a sales tax" and equalizes "the burden of the tax on property sold locally and that purchased without the state." *Watson Industries v. Shaw*, 235 N.C. 203, 211, 69 S.E. 2d 505, 511 (1952). Unlike a sales tax imposed on interstate sales, the use tax does not impermissibly burden interstate commerce since it is a tax imposed on the enjoyment of goods after the sale has already spent its interstate character. *Atwater-Waynick Hosiery Mills, Inc. v. Clayton*, 268 N.C. 673, 151 S.E. 2d 574 (1966). It is designed to complement the sales tax and to reach transactions which cannot constitutionally be subject to a sales tax. *Id.* The sales tax and the use tax may often bring about the same result but "they are different in conception. They are assessments upon different transactions and are bottomed on distinguishable taxable events." *Id.* at 675, 268 S.E. 2d at 576.

Finally, the Act provides for a number of exemptions from sales and use taxes. N.C.G.S. 105-164.13. One of these exemptions is:

> Sales of newspapers by resident newspaper street vendors and by newsboys making house-to-house deliveries and sales of magazines by resident magazine vendors making house-to-house sales.

N.C.G.S. 105-164.13(28).

## III.

Appellant's first assignment of error concerns whether the *Advocate* is a "newspaper" within the meaning of the exemption created by N.C.G.S. 105-164.13(28). In the courts below, both parties argued the merits of labeling this publication a newspaper for purposes of applying the Act. Appellant contends the Court of Appeals erred in affirming decisions of the Secretary, the Board and Wake County Superior Court that the *Advocate* does not qualify as a newspaper within the meaning of the exemption. Courts in other jurisdictions which have considered whether publications consisting predominantly of advertisements are "newspapers" have reached conflicting results. *See, Shoppers Guide Publishing Co., Inc. v. Woods*, 547 S.W. 2d 561 (Tenn. 1977) (advertising circular which is given away is not a newspaper within the commonly understood meaning of the word); *Green v. Home News Publishing Co.*, 90 So. 2d 295 (Fla. 1956) (give-away advertising circular with a modicum of local news does not amount to a newspaper). *Cf. Hadwen v. Department of Taxes*, 139 Vt. 37, 422 A. 2d 255 (1980) (advertising circular with only 2-3 percent of its space committed to current events and opinion does constitute a newspaper).

We find it unnecessary to address this issue. We assume, arguendo, that the *Advocate* is a newspaper within the meaning of the exemption as argued by appellant. *See, Hadwen v. Department of Taxes, supra* (declining to adopt a definition of newspaper based on content). We turn now to appellant's other assignments of error.

## IV.

[1] Appellant contends that application of the use tax to the *Advocate* violates the Free Speech and Free Press clauses of the

First Amendment to the United States Constitution. In support of this contention appellant refers us to the constitutional principles that a state may not unduly burden freedom of speech or of the press through taxation or other regulatory measures. Appellant reminds us that the power to tax the press is the power to control or suppress it, *Murdock v. Pennsylvania*, 319 U.S. 105, 112 (1943), and that taxes which unduly curtail freedom of speech or of the press have been held unconstitutional by the United States Supreme Court. *Grosjean v. American Press Co.*, 297 U.S. 233 (1936).

However, these maxims of constitutional law do not alone resolve the issue before us. The United States Supreme Court has made clear in a long line of cases that not all economic regulatory schemes which involve the press implicate First Amendment guarantees. *See, Citizen Publishing Co. v. United States*, 394 U.S. 131, 139 (1969); *Lorain Journal Co. v. United States*, 342 U.S. 143, 155-156 (1951); *Branzberg v. Hayes*, 408 U.S. 665 (1972).

In *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 103 S.Ct. 1365 (1983), the United States Supreme Court held a Minnesota use tax which applied to "publications" to be a constitutionally impermissible burden on the press. Although appellant relies heavily on this holding, it does not control the case at bar for three reasons. First, the taxing scheme challenged there was not the same as ours. Second, the Court did not promulgate a *per se* rule against all taxes which affect the press. Finally, the Court did undertake a general analysis of economic regulations applicable to the press which resolves appellant's complaint regarding the use tax against appellant's position.

The statute at issue in *Minneapolis Star* imposed a general sales tax on the sale of goods above a certain minimum price and a use tax on the "privilege of using, storing or consuming in Minnesota tangible personal property" which was not specifically exempt by statute and on which no sales tax was paid. *Id.* at 577. As the Court noted, this was a classic use tax designed to complement and protect the sales tax by eliminating a resident's incentive to travel to states with lower sales tax and purchase goods there rather than in Minnesota. *Id.* Such taxes, in essence, require a resident who shops out of state to pay a "use tax" equal to the

sales tax savings. *Id.* at 582. The Minnesota statute provided an exemption from the sales tax for periodic publications, which appellant, the Minneapolis Star & Tribune Company, had enjoyed from 1967 to 1971.

In 1971 the Minnesota legislature amended the statute to impose a special use tax on the costs of ink and paper used in producing periodic publications, while leaving intact the publications' exemption from sales tax. The amendment created the only situation in the entire tax scheme where components of goods that were later to be sold at retail were taxed. In all other situations, tax was assessed only when the finished product was purchased by the ultimate user. The only components taxed were ink and paper used in periodic publications. The tax, therefore, fell exclusively upon the press. In addition, the statute was again amended, this time to exempt from the use tax the first $100,000 worth of ink and paper used in any calendar year by a publication so that, in effect, only a few publishers in the state were subject to use taxation.

These unique features of the Minnesota use tax scheme, not the mere fact that the press was being taxed, led the United States Supreme Court to declare this statute unconstitutional. Nonetheless, the Court stressed that "it is beyond dispute that the states and the federal government can subject newspapers to generally applicable economic regulations without creating constitutional problems." *Minneapolis Star* at 581. The Court noted that "any tax that the press must pay, of course, imposes some burden. But, as we have observed [citations omitted] this Court has long upheld economic regulation of the press. The cases approving such economic regulation, however, emphasize the general applicability of the challenged regulation to all businesses." *Id.* at 583.

The Minnesota statute failed because it singled out the press for differential tax treatment. The only supporting rationale was the need for revenue — a need which the Court noted was better served by taxing all businesses equally. The Minnesota statute did not serve to complement the state's sales tax, as do most use tax statutes, since it imposed a use tax on publications which were specifically exempt by statute from the state's sales tax. The Court noted that had the tax been a generally applicable

In re Assessment of Taxes Against Village Publishing Corp.

sales tax it would probably have been constitutionally permissible. *Id.* at 586-87 n. 9.

Turning now to the Act at bar, we believe it clear that under the constitutional directives in *Minneapolis Star*, the North Carolina use tax can be constitutionally assessed against the *Advocate* even if we assume, as we do, that it is a newspaper which enjoys First Amendment protection. The Act imposes a tax on the "storage, use or consumption in this state of tangible personal property purchased within and without this State for storage, use or consumption in this State." N.C.G.S. 105-164.6. This language clearly demonstrates that the use tax is "an economic regulation generally applicable to all businesses," and not just the press. Unlike the Minnesota statute, the North Carolina statute does not single out the press for disparate tax treatment. Moreover, unlike the Minnesota tax, the North Carolina use tax applies only to items which, were they sold, would be subject to the sales tax, thus serving to complement the sales tax.

The earlier cases cited in *Minneapolis Star*, as interpreted in that case, establish that a state has the power to enact statutes which impose taxes on all businesses, including the press, in order to generate revenue so long as those statutes operate evenhandedly upon all similarly situated. The Act at bar imposes a uniform tax on all. Absent the kind of discriminatory tax burden evident in *Minneapolis Star*, appellant cannot be heard to complain that it, like all other businesses in the state, must bear its portion of the state's revenue needs.

### V.

Appellant's final contention is that the Act violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and the principle of equitable taxation found in Article V, section 2 of the North Carolina Constitution. The basis for appellant's equal protection claim is the Act's exemption for certain sales of newspapers provided in section 105-164.13(28).[2] Appellant argues that the Act discriminatorily classifies free circulation newspapers, like the *Advocate*, differently than paid circulation newspapers, by imposing a use tax upon the purchase of

2. The exemption is quoted in full, *supra*, in text.

printing services and supplies by free circulation newspapers while specifically exempting from the tax similar purchases by paid circulation newspapers. Appellant contends that no rational basis exists for this differential treatment and that the Act is therefore unconstitutional.

Appellant misconceives the Act's classification and the effect of the exemption. First, the tax at issue here is not a tax upon the "purchase of printing services and supplies" as appellant contends. The decisions of both the Secretary and the Board demonstrate that appellant's tax assessment was based on the cost (which would include the printer's profit) of the finished printed product appellant purchased from Womack Press, as the statute required. N.C.G.S. 105-164.6 imposes a use tax at the rate of "three percent (3%) of the *cost price* . . . of tangible personal property when the same is not sold but used, consumed, distributed or stored for use or consumption in this State." (Emphasis added.)

Second, the Act through the exemption does not, as appellant contends, classify newspapers according to whether they are paid circulation or free circulation, imposing a tax on one while exempting the other. In fact, a newspaper does not qualify for this exemption, nor fail to qualify for it, solely by virtue of whether it is sold or given away. Instead, to qualify for the exemption, a newspaper must be sold "by resident newspaper street vendors" or "by newsboys making house-to-house deliveries." The Act classifies not solely on the basis of paid-versus-free circulation, as appellant contends, but also on the basis of the method of distribution. Even paid circulation newspapers are subject to the sales tax on all sales other than those by newsboys selling door-to-door or sales by resident street vendors. The distinction in the Act is between the sale of newspapers door-to-door by newsboys or by resident street vendors on the one hand and the distribution of newspapers by any other method on the other, whether the newspapers are sold or given away.

The question is whether this classification is constitutional. The answer depends on whether the legislature's decision to exempt from sales and use taxation the sale of newspapers door-to-door by newsboys or by street vendors, while subjecting all other newspapers distributed by other means to either the sales or use

tax, bears a rational relationship to some legitimate governmental interest. We conclude that it does.

[2] In determining whether a challenged statute violates the Equal Protection Clause of the federal constitution by treating similarly situated persons differently, courts generally employ a two-tiered analysis. *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 269 S.E. 2d 142 (1980). Under this analysis, a statute is subjected to the highest level of review, or "strict scrutiny," "only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *White v. Pate*, 308 N.C. 759, 766, 304 S.E. 2d 199, 204 (1983), citing *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 16 (1973). For a statute to survive this level of constitutional review, the government must demonstrate that the classification created by the statute is "necessary to promote a compelling government interest." *Id.; Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 11, 269 S.E. 2d 142, 149 (1980).

Where as statutory classification does not burden the exercise of a fundamental right or operate to the peculiar disadvantage of a suspect class, the government need only show the classification in the challenged statute has some rational basis. *White v. Pate*, 308 N.C. at 766-67, 304 S.E. 2d at 204, *citing, Vance v. Bradley*, 440 U.S. 93 (1979). A statutory classification survives this analysis if it bears "some rational relationship to a conceivable legitimate interest of government." *Id.* Statutes subjected to this level of scrutiny come before the Court with a presumption of validity. *Id.*

[3] We conclude that the proper level of review in this case is the lower level, or rational basis standard. The Act is clearly a taxing statute which operates evenly against all persons who purchase tangible personal property within North Carolina or purchase it without North Carolina for "storage, use or consumption in this State." As such, the statute does not operate to the peculiar disadvantage of a suspect class. And, as we concluded earlier in dealing with appellant's First Amendment claims, neither does it impermissibly burden the exercise of a fundamental right.

The Act is designed to produce revenue for the state while, at the same time, equalizing the tax burden by insuring that out-of-state purchases are taxed at the same rate as local sales. *Watson Industries v. Shaw*, 235 N.C. 203, 69 S.E. 2d 505 (1952). The Act is an economic regulation. In determining whether a purely economic regulation violates the Equal Protection Clause, the test generally applied is the rational basis standard. *See, Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794 (1976). Indeed, appellant seems to recognize that this is the proper level of review in its argument that the classification created by G.S. 105-164.13(28) rests upon "no rational basis." Appellant's Brief p. 16.

[4] Having concluded that the rational basis standard is the proper level of review in this case, we turn now to the question of whether the Act's classification "bears a rational relationship to a conceivable legitimate purpose." *White v. Pate*, 308 N.C. at 766-67, 304 S.E. 2d at 204.

The Equal Protection Clause is not violated merely because a statute classifies persons differently, so long as there is a reasonable basis for the distinction. *Lamb v. Wedgewood*, 308 N.C. 419, 435, 302 S.E. 2d 868, 877 (1983). "A court may not substitute its judgment of what is reasonable for that of the legislative body, particularly where the reasonableness of a particular classification is fairly debatable." *Id., citing ASP Associates v. The City of Raleigh*, 298 N.C. 207, 226, 258 S.E. 2d 444, 456 (1979).

In creating the sales and use tax exemption for newspaper sales door-to-door by newsboys or by street vendors, the legislature could have concluded that these sales would likely be made, for the most part, by minors acting as independent merchants. *See, Hadwen v. Department of Taxes*, 139 Vt. 37, 422 A. 2d 255 (1980). As such, requiring the sales tax to be paid on these transactions would place a great burden both on the vendors, whose age and lack of business experience would render it difficult to comply with the monthly reporting procedures required by the Act, and the Department of Revenue, which would be charged with policing these sales and enforcing payment of the tax. The legislature, therefore, could have reasonably concluded that the state's interest in generating revenue was better served by a

system which exempted these particular sales than one which included them.

The *Advocate* also distributes its newspapers through door-to-door vendors, just as do paid circulation newspapers. The *Advocate's* vendors, however, are not independent contractors making retail sales as are vendors of paid circulation newspapers. Rather, they are agents of the *Advocate*, distributing a free product. As such, there is no retail sale involved and the concern that the youth and lack of business experience of minors acting as independent contractors will render the monthly reporting requirements of the Act too burdensome for both the state and the vendors is not present. Where no sale is involved, no reports for tax purposes are required. The rationale which justifies exempting *retail sales* by resident street vendors and newsboys selling door-to-door does not apply to the *Advocate*. Appellant is not taxed, as it contends, simply because it is free. It is taxed because its distribution method does not involve retail sales by the narrowly defined group of vendors described by the Act. In that sense, the *Advocate* is treated no differently than a paid circulation newspaper which distributes its product in any manner other than resident street vendors or newsboys selling door-to-door. The legislature has chosen to exempt from the tax two particular types of retail newspaper sales. The *Advocate* fails to qualify for the exemption for the reason that it has no retail sales. A paid circulation newspaper would similarly fail to qualify for the sales and use tax exemption to the extent that the newspaper is sold at retail by means other than resident street vendors or door-to-door newsboys. A sales tax would be levied on these other kinds of retail sales.

We hold, therefore, that the classification created by the Act rests upon a rational basis and is therefore not in violation of the Equal Protection Clause.

Appellant also contends that the classification violates Article V, section 2 of the North Carolina Constitution which provides in pertinent part that "the power of taxation shall be exercised in a just and equitable manner. . . ." However, we have held that a classification does not violate this provision if it is founded upon a reasonable distinction and bears a substantial relation to the object of the legislation. *In re Appeal of Martin*, 286 N.C. 66, 209

S.E. 2d 766 (1974). It is only those classifications which are arbitrary or capricious which violate Article V, section 2. *Id.*

We have already concluded that the classification here is not arbitrary or capricious, but is based upon a reasonable distinction substantially related to the subject of the legislation. The classification, therefore, does not violate Article V, section 2 of the North Carolina Constitution.

The decision of the Court of Appeals is

Modified and affirmed.