No. 84–1248.  Village Publishing Corp. v. North Carolina Department of Revenue.  Appeal from Sup. Ct. N. C. dismissed for want of substantial federal question.

Justice White, with whom Justice Brennan joins, dissenting.

The North Carolina Sales and Use Tax Act, N. C. Gen. Stat. §§ 105–164.1 to 105–164.44A (1979 and Supp. 1983), exempts "[s]ales of newspapers by newspaper street vendors and by newspaper carriers making door–to–door deliveries and sales of magazines by magazine vendors making door–to–door sales."  § 105–164.13(28). The provision offers newspapers using this means of delivery a tax benefit denied other members of the press.  A publisher distributing a newspaper free of charge must pay a sales or use tax on personal property that it purchases and incorporates into its newspaper (or on purchases of the printed newspaper itself if it is purchased in completed form from the printer), for such property is "not sold but used, consumed, distributed, or stored for consumption" in North Carolina.  § 105.164.6(1).  A publisher selling a newspaper at retail other than through street vendors or paper-

boys escapes sales or use taxation on personal property that goes into the production of the newspaper, for that property is resold, see § 105–164.13(8); however, a sales tax must be paid on the final retail sale of such a newspaper. A newspaper that is sold through street vendors or newsboys escapes both forms of taxation: the publisher's purchase of personal property that goes into its final product is exempt, as such property is resold, and its retail sales are also exempt under § 105–164.13(28).

In this case, the Supreme Court of North Carolina held that this tax scheme, as applied to newspapers ineligible for the exemption, neither abridged the freedom of the press nor violated the Equal Protection Clause. The court pointed out that the North Carolina sales and use tax scheme did not single out the press for special treatment, but applied to retail sales generally. *In re Assessment of Taxes Against Village Pub. Corp.*, 312 N. C. 211, 322 S. E. 2d 155 (1984). Thus, it was free from one of the primary defects of the tax struck down by this Court in *Minneapolis Star & Tribune Co.* v. *Minnesota Comm'r of Revenue*, 460 U. S. 575 (1983). That the statute contained an exemption for newspapers sold through street vendors and newsboys did not make it invalid: such an exemption required only a rational basis. The court found such a rational basis in the difficulty of requiring street vendors and newsboys—many of them children—to collect the sales tax. This difficulty, not present when a paper was sold through other means or given away free, justified the special exemption.

This case is within our mandatory appellate jurisdiction under 28 U. S. C. § 1257(2). Appellant argues that the North Carolina tax scheme, by singling out one segment of the press for a special exemption from taxation, violates the First Amendment and the Equal Protection Clause. In summarily dismissing the appeal, the Court today holds these arguments "insubstantial." In view of *Minneapolis Star*, *supra*, I cannot agree.

The statute at issue in *Minneapolis Star* not only singled out the press for special treatment, but also drew distinctions among members of the press, subjecting some to a tax while exempting others. The Court found both features objectionable. Concerning the second defect, we stated, "recognizing a power in the State not only to single out the press but also to tailor the tax so that it singles out a few members of the press presents such a potential for abuse that no interest suggested by Minnesota can jus-

tify the scheme." 460 U. S., at 592. The Court went on to hold that "[a] tax that singles out the press, *or that targets individual publications within the press,* places a heavy burden on the State to justify its action." *Id.,* at 592–593.

The North Carolina statute appears to discriminate among members of the press, selecting newspapers using one mode of delivery for a complete exemption from the sales/use tax while requiring all others to pay a tax on either their retail sales or the purchases of personal property that go into their publications. *Minneapolis Star* indicates that the State bears a heavy burden in justifying such a distinction. The North Carolina Supreme Court, however, applied mere rational-basis scrutiny in upholding the statute. To me, even the suggestion that the statutory distinction is rational is debatable;\* if, as *Minneapolis Star* suggests, the statute is subject to more stringent scrutiny, the question whether it can survive is far from insubstantial.

The Court's dismissal may reflect discomfort with *Minneapolis Star*'s broad holding that taxes drawing distinctions among members of the press are suspect even when they do not discriminate on the basis of content and are not apparently designed to suppress speech. If that is so, it seems to me that a more proper way of establishing the bounds of the principle asserted in *Minneapolis Star* is to give this case plenary consideration and openly decide the substantial questions it presents. I would note probable jurisdiction and set the case down for oral argument.

---

\*The difficulty in administering a sales tax that must be collected by children who serve as paperboys may well provide a rational basis for exempting the *retail sales* of newspapers sold through street vendors or newsboys from taxation. However, this rationale hardly seems to justify exempting such papers entirely from the sales/use tax scheme. Just as appellant and other free circulation newspapers are required to pay the sales or use tax on their purchases of personal property that form components of (or the entirety of) their final product, newspapers that are exempt from sales tax by virtue of their mode of distribution could easily be required to pay the use tax on their own purchases of the personal property that goes into their newspapers.