IN THE MATTER OF: THE CONSOLIDATED APPEALS OF CERTAIN TIMBER COMPANIES FROM THE DENIAL OF USE VALUE ASSESSMENT AND TAXATION BY CERTAIN COUNTIES

No. 8910PTC875

(Filed 15 May 1990)

1. **Constitutional Law § 20 (NCI3d)— ad valorem taxation of forestland—distinctions between corporations—classification not unconstitutional**

   The ownership distinctions for ad valorem taxation purposes in N.C.G.S. § 105-277.2 *et seq.* between forestland owned by corporations whose shareholders are all natural persons actively engaged in the business of the corporation or related to someone who is, and forestland owned by corporations which do not meet that and other requirements, does not violate article V, section 2(2) of the North Carolina Constitution. The definition of "individually owned" contained in N.C.G.S. § 105-277.2(4)b and N.C.G.S. § 105-277.2(5a) is neither arbitrary nor capricious; rather, after three legislative revisions, this statute has been carefully tailored to provide a tax incentive to the family forester while avoiding a windfall to those foresters less likely to need such an incentive.

   **Am Jur 2d, State and Local Taxation § 185.**

2. **Constitutional Law § 20 (NCI3d)— taxation of forestland— classification by corporate type—no violation of equal protection**

   The distinctions in N.C.G.S. § 105-277.2 *et seq.* between forestland owned by corporations whose shareholders are engaged in the business or related to someone who is engaged in the business and forestland owned by corporations who do not meet that and other requirements does not violate the equal protection requirements of the state and federal constitutions. The statute is an economic regulation which must be reviewed under the second tier rational basis standard and the United States Supreme Court has always emphasized

**IN RE APPEALS OF TIMBER COMPANIES**

[98 N.C. App. 412 (1990)]

that states have broad powers to impose and collect taxes. While N.C.G.S. § 105-277.2 *et seq.* is not perfect, it is clear that the ownership requirements of the statute are rationally related to the ends the General Assembly sought to accomplish; as long as it is arguable that the statutory scheme designed by the legislature *could* work, then the challenged statute must be upheld.

**Am Jur 2d, State and Local Taxation § 185.**

APPEAL by petitioners from an order entered on 30 March 1989 by the Property Tax Commission. Heard in the Court of Appeals on 6 March 1990.

Petitioners applied with various county tax boards in North Carolina for present use valuation of their forestland for *ad valorem* tax purposes. All applications were denied by the county boards because the timber companies did not "individually own" their property as defined by N.C. Gen. Stat. §§ 105-277.2(4)b and -277.2(5a). Petitioners appealed to the Property Tax Commission where all appeals were consolidated in a single proceeding. The Commission upheld the denial of petitioners' applications and refused to reverse the counties' grant of present use treatment to so-called family corporations. The Commission also refused to rule on petitioners' constitutional challenge to the statute because such power rested only in the province of the judicial branch. Petitioners appealed.

Appellants are Boise Cascade Corporation ("Boise Cascade"), Champion International Corporation ("Champion"), Georgia-Pacific Corporation ("Georgia-Pacific"), and Weyerhaeuser Company ("Weyerhaeuser"). These public corporations own and operate substantial timber operations in North Carolina. In 1986 each company filed applications in several counties seeking present use value assessment and taxation of specific tracts of forestland they own in the respective counties. Boise Cascade filed in Anson, Bladen and Chatham counties. Champion filed in Burke, Franklin and Rutherford counties. Georgia-Pacific filed in Bertie, Brunswick, Hertford and Martin counties. Weyerhaeuser filed in Bertie, Currituck, Martin, Onslow, Pamlico and Washington counties. (These fourteen counties are hereinafter referred to as "the Counties.") These applications were denied by the Counties and by their respective county boards of equalization and review.

The *ad valorem* tax statute involved, N.C. Gen. Stat. § 105-277.2 *et seq.*, provides that forestland owned by certain corporations whose shareholders meet specific descriptions is assessed and taxed on the basis of "present use value." Present use value is based on the capability of the property to produce income in its present use, in this case as forestland, regardless of other available uses for the property that would produce greater income and higher value. Corporations such as appellants, which do not qualify under the statute, are assessed and taxed at the "market value" rate, meaning that the land is valued and then taxed at the highest and best use for which the property is capable of being used, whether that be residential, commercial, industrial or otherwise, without regard for the current use of the property. The record is clear that taxing the property at the market value rather than at the present use value has resulted in higher property taxes for appellants.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Hubert Humphrey and Jim W. Phillips, Jr., for appellants.*

*Simpson, Aycock, Beyer & Simpson, by Samuel E. Aycock and Michael Doran; and McMurray, McMurray & Alexander, by John W. Alexander, for appellees.*

ARNOLD, Judge.

Appellants' property qualifies under all but one criteria of the statute in question for the present use taxation classification. To qualify, forestland owned by corporations must be "part of a forest unit that is actively engaged in the commercial growing of trees under a sound management program." N.C. Gen. Stat. § 105-277.2(2). The forestland must be comprised of tracts twenty acres in size or larger. N.C. Gen. Stat. § 105-277.3(a)(3). The property must be owned for at least four years by a taxpayer whose principal business is that of a timber company. N.C. Gen. Stat. §§ 105-277.2(4)b and -277.3(b)(2). The only requirement appellants do not satisfy is one related to the description of the shareholders of the corporation owning the property. The shareholders must all be "natural persons actively engaged in the business of the corporation or a relative of a shareholder who is actively engaged in the business of the corporation." N.C. Gen. Stat. § 105-277.2(4)b. " 'Relative' means:

IN RE APPEALS OF TIMBER COMPANIES

[98 N.C. App. 412 (1990)]

a. Spouse;

b. A lineal ancestor;

c. A lineal descendant;

d. A brother or sister, including a stepbrother or stepsister;

e. An adopted or adoptive child, parent, grandchild, or grandparent; or

f. A spouse of a person listed in paragraphs b. through e." N.C. Gen. Stat. § 105-277.2(5a).

The ownership requirement excludes publicly owned corporations. Although in many instances corporations eligible under this statute are "family" corporations, they need not be "family" corporations in the strict sense. Eligible corporations can have numerous shareholders so long as the shareholders qualify by engagement in the business or by relationship to someone who is. Eligible corporations can be large, both in financial size and in the number of shareholders, while excluded corporations can be small both in net worth and in number of shareholders.

Appellants have failed to carry forward in their briefs any argument that the ruling of the Property Tax Commission was erroneous other than the constitutional attack on the controlling statute forming the basis of the decision. As a result, any objection to the ruling of the Commission based on their application of the statute to the taxpayers has been abandoned. N.C.R. App. P. 28(a). Thus, the only question before us is the constitutionality of the statute.

The Property Tax Commission is without authority to rule on the constitutionality of N.C. Gen. Stat. § 105-277.2 *et seq. Johnston v. Gaston County*, 71 N.C. App. 707, 323 S.E.2d 381 (1984), *cert. denied*, 313 N.C. 508, 329 S.E.2d 392 (1985). Instead, such authority is vested in this Court. *Id.; see also* N.C. Gen. Stat. § 105-345.2(b)(1).

[1] Appellants first argue that the classification of property in N.C. Gen. Stat. § 105-277.2 *et seq.* violates the powers of the General Assembly as granted under article V, section 2 of the North Carolina Constitution and therefore is not in compliance with article I, section 19 of the state constitution. Appellants' main attack on the classification system of the statute focuses on alleged violations of their equal protection rights under article I, section 19 of the

state constitution and the fourteenth amendment of the United States Constitution. In the second portion of this opinion, those questions will be examined more thoroughly. First, however, we will analyze appellants' closely related argument concerning article V, section 2 of the state constitution, which states:

> (2) *Classification.* Only the General Assembly shall have the power to classify property for taxation, which power shall be exercised only on a State-wide basis and shall not be delegated. No class of property shall be taxed except by uniform rule, and every classification shall be made by general law uniformly applicable in every county, city and town, and other unit of local government.

While this constitutional grant of authority establishes the general rule that taxes must be applied uniformly, it "does not prohibit reasonable flexibility and variety appropriate to reasonable schemes of State taxation." *In re Appeal of Martin*, 286 N.C. 66, 75, 209 S.E.2d 766, 773 (1974). "[A] classification does not violate this provision if it is founded upon a reasonable distinction and bears a substantial relation to the object of the legislation . . . . It is only those classifications which are arbitrary or capricious which violate Article V, Section 2." *In re Assessment of Taxes Against Village Publishing Corp.*, 312 N.C. 211, 223-24, 322 S.E.2d 155, 163 (1984), *appeal dism., sub nom.*, 472 U.S. 1001, 86 L.Ed.2d 710 (1985).

To find that N.C. Gen. Stat. § 105-277 *et seq.* is unconstitutional under article V, section 2 of our state constitution, appellants must show that the definition of "individually owned" contained in the statute is either arbitrary or capricious. As noted above, the General Assembly has constitutional authority to designate special classes of property for taxation purposes. N.C. Gen. Stat. § 105-277.2 *et seq.* designates two main criteria to qualify for the special taxation classification: (1) the land must be used as agricultural, horticultural or forest land, and (2) it must be individually owned. Property with only one of these characteristics is not within the special class designated by the General Assembly. Appellants use the property for the right purpose but do not individually own it. *See* N.C. Gen. Stat. §§ 105-277.2(4)b and (5a).

In their brief, appellants make the following argument on this point:

## IN RE APPEALS OF TIMBER COMPANIES

[98 N.C. App. 412 (1990)]

The result (of the individual ownership requirement) is to draw an arbitrary line between corporations engaged in *exactly* the same kind of business, owning *exactly* the same kind of land, and making *exactly* the same use of the property involved, granting some of these corporations preferential tax treatment for their property and denying such tax treatment to other similarly situated corporations . . . . This blatantly violates the rule that for taxing purposes "all persons similarly circumstanced shall be treated alike," (citation omitted); and that classification must rest on "a genuine distinction." (citation omitted). The distinction attempted here, based not on genuine differences between corporations — there are none — but on an arbitrary description of the individuals who happen to own the stock in the taxpayer corporation and beyond that on their family relationships, is plainly not a genuine distinction between the corporate taxpayers for *ad valorem* tax purposes.

To determine if the ownership requirement of the statute is constitutional, it is necessary to examine the purpose for including this distinction in the statute. As originally written in 1973, the preferential tax treatment provided by the present use valuation statute was limited to "individually owned land," that is, property owned only by natural persons. Property owned by any corporate entity was entirely excluded. N.C. Gen. Stat. § 105-277.2(4) (Supp. 1973). The purpose of the statute was to ease the tax burden on family farmers or foresters and encourage their continued use of the property rather than succumbing to development pressures. Furthermore, "[t]he law as written in 1973 appears to be an attempt to deprive agribusiness and development corporations of the benefits of present use valuation." *W.R. Company v. Property Tax Comm.*, 48 N.C. App. 245, 258, 269 S.E.2d 636, 643 (1980), *disc. rev. denied*, 301 N.C. 727, 276 S.E.2d 287 (1981).

In 1975, the General Assembly amended the statute and broadened the definition of "[i]ndividually owned" to include some corporate entities, namely "family corporations." N.C. Gen. Stat. § 105-277.2(4)b (1975 Supp.) "The amendment was enacted at a time when farm families were advised to incorporate for estate planning purposes." *W.R. Company*, at 259, 269 S.E.2d at 644; *see also* Institute of Government Property Tax Bulletin #44 (20 August 1975).

IN RE APPEALS OF TIMBER COMPANIES

[98 N.C. App. 412 (1990)]

On at least three other occasions, the General Assembly has had opportunities to broaden the qualified ownership class to include public corporation but has chosen not to. For example, a 1979 bill designed to accomplish this purpose was allowed to die in the House Finance Committee. *W.R. Company*, at 259, 269 S.E.2d at 644. Again in 1983, the House defeated a bill that specifically sought to extend use-value appraisal eligibility to publicly held corporations. This defeat for publicly held timber corporations came despite a specific recommendation to change the law made by the 1983 Property Tax System Study Committee. Instead, the 1985 session of the General Assembly chose to add subsection (5a) to N.C. Gen. Stat. § 105-277.2, which changed the ownership requirement by expanding the class of relatives who could be shareholders in the family corporations. This was the latest change made in the statute.

At least thirty-five other states have similar statutes according special tax treatment to property used in this manner. Appellants contend that North Carolina is the only state that restricts the special tax treatment of the statute based upon the identity of the property owner. However, our research indicates that other states, such as Georgia, South Carolina, Texas and Minnesota, have to varying degrees excluded certain corporate taxpayers from the preferential tax treatment laws. Nonetheless, it is true that North Carolina's statute is more restrictive in excluding public corporations than most other ones. Yet, we believe this is because the North Carolina General Assembly has accomplished what the majority of other states have failed to do. In *W.R. Company*, Judge Vaughn noted the following major criticism of these types of tax statutes:

> [T]he programs are for the most part applicable to all people and all lands statewide resulting in a tax windfall for those not financially pressed by taxes and tax reduction for land which is not the object of development pressures. It is an unfair subsidization of farmers and land speculators who are not in need of a tax shelter.

*Id.* at 256, 269 S.E.2d at 642. Judge Vaughn then reviewed the specifics of the North Carolina statute and the amendments concerning the ownership requirements made by the General Assembly during the 1970s. After even more legislative refinement during the 1980s, we find his comment concerning the ownership require-

ment of the statute even more pertinent today: "The intent of the legislature seems quite clear. Its intent has been to be very restrictive with regard to what corporate entities can receive the benefit of present use valuation. The law is generally restrictive and answers much of the criticism leveled at such tax statutes in other jurisdictions." *Id.* at 259, 269 S.E.2d at 644.

The definition of individually owned contained in N.C. Gen. Stat. §§ 105-277.2(4)b and -277.2(5a) is neither arbitrary nor capricious. Rather, after three legislative revisions this statute has been carefully tailored to provide a tax incentive to the family forester while avoiding a tax windfall to those foresters less likely to need such an incentive. The ownership distinction in the statute is reasonable and does not violate art. V, section 2(2) of the North Carolina Constitution.

[2] In conjunction with their first argument, appellants claim that the ownership requirement violates the Equal Protection Clause grounded in art. I, § 19 of the North Carolina Constitution. Appellants also contend that the statute violates their equal protection rights under the fourteenth amendment of the United States Constitution. In regard to these constitutional guarantees, the North Carolina Supreme Court has held that the principle of equal protection, made explicit in the fourteenth amendment to the federal constitution, has been expressly incorporated in art. I, § 19 of our state constitution, and for all practical purposes is the same under both constitutions. *S.S. Kresge Co. v. Davis*, 277 N.C. 654, 178 S.E.2d 382 (1971); *Hajoca Corp. v. Clayton*, 277 N.C. 560, 568, 178 S.E.2d 481, 486 (1971). Therefore, we will examine the two equal protection questions simultaneously.

When addressing a claim that the Equal Protection Clause has been violated, the courts employ a two-tiered analysis. *Regan v. Taxation With Representation*, 461 U.S. 540, 76 L.Ed.2d 129 (1983). The highest level of review, or "strict scrutiny," applies "only when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 49 L.Ed.2d 520, 524 (1976). When strict scrutiny applies, the government must show that the classification created by the statute is "necessary to promote a compelling government interest." *In Re Assessment of Taxes Against Village*

*Publishing Corp.*, 312 N.C. 211, 221, 322 S.E.2d 155, 162, *appeal dism., sub nom.*, 472 U.S. 1001, 86 L.Ed.2d 710.

A lower level of review applies when there is no fundamental right or suspect class involved. "A statutory classification survives this analysis if it bears 'some rational relationship to a conceivable legitimate interest of government.' . . . . Statutes subjected to this level of scrutiny come before the Court with a presumption of validity." *Id.* In the case before us, the statute is an economic regulation. In determining whether a purely economic regulation violates the Equal Protection Clause, the rational basis test is applied. *Id.*

Moreover, in cases challenging the constitutionality of tax statutes on equal protection grounds, the United States Supreme Court has always emphasized that States have broad powers to impose and collect taxes. *See Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 35 L.Ed.2d 351, *reh'r. den.*, 411 U.S. 910, 36 L.Ed.2d 200 (1973). (The Court held that a state constitutional provision exempting individuals from *ad valorem* personal property taxes and imposing such taxes only on corporations and other "non-individuals" does not violate the Equal Protection Clause of the fourteenth amendment.) "Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Id.* at 359, 35 L.Ed.2d at 354-55. "[I]n taxation, even more than in other fields, legislatures possess the greatest freedom in classification." *Madden v. Kentucky*, 309 U.S. 83, 88, 84 L.Ed. 590, 593 (1940).

Furthermore, under the lower tier, rational basis test, the party challenging the legislation has a tremendous burden in showing that the questioned legislation is unconstitutional. In *Lehnhausen*, Justice Douglas wrote:

> There is a presumption of constitutionality which can be overcome "only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." . . . The burden is on the one attacking the legislative arrangement to negative *every conceivable basis* which might support it. (citations omitted).

*Lehnhausen*, 410 U.S. at 364, 35 L.Ed.2d at 358 (emphasis added). Distinctions of degree between classes of taxpayers made by a

legislature are presumed to rest on a rational basis "if there is any conceivable state of facts" which would support the legislative decision. *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 509, 81 L.Ed. 1245, 1253 (1937).

Appellants have not demonstrated that the statute here is unconstitutional because they have failed to "negative every conceivable basis" that could exist to support this legislation. On the contrary, while N.C. Gen. Stat. § 105-277.2 *et seq.* is not perfect, it is clear that the ownership requirements of the statute are rationally related to the ends the General Assembly sought to accomplish. This statute has three primary goals: (1) to provide a tax incentive to family foresters; (2) to preserve the present use of forest land; and (3) to avoid a tax windfall for those not in need of such an incentive. *See W.R. Company*, at 256-57, 269 S.E.2d at 642. In our view, the narrowly drafted language of N.C. Gen. Stat. §§ 105-277.2(4)b and -277.2(5a) comes closer to reaching these goals than other legislation of a similar nature in the country.

Appellants claim that the distinction the statute draws between public and private ownership does not in reality help protect undeveloped forestland. They argue:

It is fundamentally inconsistent with these purposes to exclude public corporations which own a substantial amount of timberland in the greenbelts around the cities and towns . . . . Indeed, because of the substantial amount of land in an undeveloped state and "open and green spaces" owned by Appellant timber companies in North Carolina, and the need to provide a "deterrent to such development," the exclusion of such companies from the statute defeats rather than serves the purposes of the statute.

Even if appellants' argument here is valid, the proper forum for its assertion is in the legislative chambers of the General Assembly, not in this Court. It is unimportant whether or not the General Assembly's use of a "public-private ownership" distinction to delineate between landowners who are "in need" of a tax incentive and ones who are not in fact frustrates one of the goals of the legislation. For the purposes of this proceeding, as long as it is arguable that the statutory scheme designed by our legislators *could* work, then we must uphold the challenged statute. The United States Supreme Court has consistently rejected attacks such as the one launched here under the guise of the Equal Protection

Clause. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 66 L.Ed.2d 659, *reh. denied*, 450 U.S. 1027, 68 L.Ed.2d 222 (1981).

In *Clover Leaf Creamery*, several dairies and milk container manufacturers challenged a state statute that banned the retail sale of milk in plastic nonreturnable, nonrefillable containers but permitted such sale in other nonreturnable, nonrefillable containers. The Court held the ban was not violative of the Equal Protection Clause. *Id.* "Whether *in fact* the Act will promote more environmentally desirable milk packaging is not the question: the Equal Protection Clause is satisfied by our conclusion that the Minnesota Legislature *could rationally have decided* that its ban on plastic nonreturnable milk jugs might foster greater use of environmentally desirable alternatives." *Id.* at 466, 66 L.Ed.2d at 670 (emphasis in original). Where the evidence before the legislature is "at least debatable," courts should not substitute their judgments for those of the lawmakers. *Id.* at 469, 66 L.Ed.2d at 672. Clearly, the ownership distinction drawn by the General Assembly in this statute arguably is related to the legitimate goals of helping foresters preserve undeveloped land, while spreading the tax burden in a fair manner. We hold that the ownership distinctions of N.C. Gen. Stat. §§ 105-277.2(4)b and -277.2(5a) satisfy the equal protection requirements of the state and federal constitutions.

Appellants' final assignment of error pertains to the proper remedy to impose were we to find that the statute here was unconstitutional. Because we uphold the statute against the constitutional attack, we will not examine the arguments related to the remedy.

Affirmed.

Judges JOHNSON and ORR concur.