BLUE, J.
 

 Thomas Jefferson said that if he had to decide between a government without newspapers and newspapers without a government, he would unhesitatingly prefer the latter. Oxford Dictionary of American Legal Quotations (1993) p. 172. In modern times, of course, we have both governments and newspapers. Governments tax newspapers, and purchasers of newspapers who pay these taxes do not like to pay them. One such unhappy taxpayer is the plaintiff, John F.
 
 *475
 
 Newton. On a Saturday morning in 1995, the plaintiff went to a CVS Pharmacy in Farmington and purchased three newspapers. The total cost of the newspapers— a Hartford Courant, a Boston Globe, and a New York Times — was $2. The plaintiff also had to pay the Connecticut sales tax on this purchase, which amounted to twelve cents. He now brings this tax appeal, contending that the imposition of the sales tax on newspapers is unconstitutional. Under well established precedent, however, he cannot prevail.
 

 The jurisdiction of this court to hear the plaintiffs appeal is established by General Statutes § 12-422. Newton duly made a refund claim to the department of revenue services (department), and the department sent him a formal denial. An appeal was timely filed in this court. The question whether the plaintiff, as a purchaser, is a “taxpayer” authorized to bring a tax appeal pursuant to § 12-422 has not been raised by the department. The department denial letter, however, refers to the plaintiff as a “taxpayer.” The “ultimate burden” of the sales tax, moreover, is on the purchaser.
 
 Hartford Parkview Associates Ltd. Partnership
 
 v.
 
 Groppo,
 
 211 Conn. 246, 254, 558 A.2d 993 (1989). Under these circumstances, the merits will be considered. Pursuant to a scheduling order, the parties have filed cross motions for summary judgment. There is no genuine issue as to any material fact. The issue is one of law.
 

 Although the plaintiff levies a barrage of constitutional arguments against the imposition of the sales tax on the sale of newspapers, these arguments essentially boil down to the contention that such an imposition is inconsistent with the freedom of the press guaranteed by the first amendment to the United States constitution. If this were a case of first impression, the plaintiffs argument would be an intriguing, if problematic one. In fact, however, his argument is foreclosed by clear judicial precedent.
 

 
 *476
 
 The United States Supreme Court has recently explained that “[a] statute is presumptively inconsistent with the First Amendment if it imposes a financial burden on speakers because of the content of their speech.”
 
 Simon & Schuster
 
 v.
 
 Crime Victims Board,
 
 502 U.S. 105, 115, 112 S. Ct. 501, 116 L. Ed. 2d 476 (1991). To put it a somewhat different way, “differential taxation of First Amendment speakers is constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints.”
 
 Leathers
 
 v.
 
 Medlock,
 
 499 U.S. 439, 447, 111 S. Ct. 1438, 113 L. Ed. 2d 494 (1991). This latter formulation suggests a two-part test. To run afoul of the first amendment, a tax must (1) differentiate among speakers and (2) do so on the basis of content. A sales tax of general application, equally applicable to newspapers and numerous other commodities, violates neither prong of this test.
 

 This principle has been recognized by the courts for decades. The Supreme Court of Arizona explained more than one-half a century ago that “[i]f security of life and property were possible without expense, taxes could be forgotten, but, since that is not possible, all who share the protection given by the government should also share the expense of that protection in proportion to their ability, regardless of the business they are engaged in, if it is for profit. The mere fact that a tax reduces a person’s net income is no legal restraint on him or his business. If the taxpayer is a newspaper publisher, it must appear that the law not only ‘takes money from the pocket,’ but also that the law was adopted by the state as a ‘form of previous restraint upon printed publications, or their circulation.’ If it is so adopted, then, however small the tax may be, it is bad and in violation of due process. It is not the amount of the tax, but the use of it as a means to abridge the freedom of the press, that is forbidden.”
 
 Giragi
 
 v.
 
 Moore,
 
 49 Ariz. 74, 83, 64 P.2d 819, appeal dismissed, 301 U.S. 670, 57 S.
 
 *477
 
 Ct 946, 81 L. Ed. 1334 (1937).
 

 At argument, Newton contended that this modem formulation of first amendment law is inconsistent with the view of the framers. That is not, however, the case. In
 
 Grosjean
 
 v.
 
 American Press Co.,
 
 297 U.S. 233, 56 S. Ct. 444, 80 L. Ed. 660 (1936), the United States Supreme Court reviewed the stamp tax struggle that gave rise to the American revolution. It concluded that “in the adoption of the English newspaper stamp tax and the tax on advertisements, revenue was of subordinate concern .... [T]he dominant and controlling aim was to prevent, or curtail the opportunity for, the acquisition of knowledge by the people in respect of their governmental affairs. It is idle to suppose that so many of the best men of England would for a century of time have waged, as they did, stubborn and often precarious warfare against these taxes if a mere matter of taxation had been involved. The aim of the stmggle was not to relieve taxpayers from a burden, but to establish and preserve the right of the English people to full information in respect of the doings or misdoings of their government.” Id., 247. The modem constitutional test, described above, fully preserves the right of the people to such “full information.”
 

 Given this test, it is clear that the Connecticut sales tax does not violate the first amendment when applied to newspapers. The tax is a tax of general application. It does not differentiate among speakers and does not discriminate on the basis of content. The same tax applies to the New York Times and to the Wall Street Journal alike. The plaintiffs first amendment challenge must, consequently, fail.
 

 The plaintiffs remaining constitutional challenges are much more difficult to grasp. He contends that the sales tax on newspapers violates the uniformity clause of the U.S. Const., article first, § 8, cl. 1. That clause,
 
 *478
 
 however, is a limitation upon Congress rather than upon the states. There is, in any event, nothing in a sales tax of general application that violates the principle of uniformity.
 

 The plaintiff next contends that the first amendment and the principal of uniformity are violated by the statutory exemption for “sales of newspapers by subscription” set forth in General Statutes § 12-412 (6) (B). This argument is unpersuasive. This exemption is not content-based. The legislature could rationally determine that the administrative expense involved in collecting the sales tax on newspapers sold by subscription would render the imposition of the tax on that particular commodity uneconomical. See
 
 In re Assessment of Taxes Against Village Publishing Corp.,
 
 312 N.C. 211, 219-24, 322 S.E.2d 155 (1984), appeal dismissed, 472 U.S. 1001, 105 S. Ct. 2693, 86 L. Ed. 2d 710 (1985). In a dissenting opinion to the order dismissing the appeal in the case just cited, Justice White suggested that he was troubled by distinctions among members of the press and that plenary consideration should be given to the question of whether “taxes drawing distinctions among members of the press are suspect even when they do not discriminate on the basis of content and are not apparently designed to suppress speech.”
 
 Village Publishing Corp.
 
 v.
 
 North Carolina Dept. of Revenue,
 
 supra, 472 U.S. 1001, 1003 (1985). That question, however, was subsequently answered in
 
 Leathers
 
 v.
 
 Medlock,
 
 supra, 499 U.S. 439.
 
 Leathers
 
 makes it clear that differential taxation among members of the press is suspect only when it is content-based. Id., 447. Connecticut’s exemption for newspapers sold by subscription cannot be so described.
 

 The plaintiff claims a similar unfairness in what he perceives to be a tax exemption for the sale of newspapers from vending machines. This, however, is a misperception. Newspapers sold from vending machines are
 
 *479
 
 taxed. Dept. of Revenue Services, Special Notice 91 (1), p. 3 (1991). The amount of the tax is simply absorbed in the cost of the newspaper so sold.
 

 The plaintiff also argues that the tax in question impairs the obligation of contracts in violation of U.S. Const., article first, § 10. I confess that I cannot see just what contract is being impaired. At argument, the plaintiff suggested that the “contract” he relies upon is the constitution itself, but this reasoning, of course, quickly becomes circular. Suffice it to say that none of the plaintiffs constitutional arguments are sufficient to carry the day.
 

 The plaintiff finally asserts that the tax in question violates the Connecticut constitution. He has, however, failed to provide an independent analysis of the state constitutional issues. Without such a separate analysis, the state constitutional claim is deemed abandoned.
 
 State
 
 v.
 
 Ellis,
 
 232 Conn. 691, 692 n.1, 657 A.2d 1099 (1995).
 

 For the reasons stated above, the appeal is dismissed. Judgment shall enter for the defendant.