CALDOR, INC. *v.* GERALD J. HEFFERNAN, TAX COMMISSIONER

EASTERN COLOR PRINTING COMPANY *v.* TAX COMMISSIONER

BOGDANSKI, PETERS, ARMENTANO, SHEA and WRIGHT, Js.

Argued January 14—decision released April 21, 1981

*James A. Fulton,* with whom, on the brief, was *George F. Carroll, Jr.,* for the plaintiff in the first case.

*Pamela M. Taylor,* with whom was *Donald McPartland,* for the plaintiff in the second case.

*Robert L. Klein,* assistant attorney general, with whom were *Morris Borea,* legal intern, and, on the brief, *Carl R. Ajello,* attorney general, and *Ralph G. Murphy,* assistant attorney general, for the defendant in both cases.

*J. Charles Mokriski* and *Vanessa L. Bryant,* filed a brief as amici curiae.

ARMENTANO, J. These two cases are sent to us on a reservation. Because they present identical legal issues, they are consolidated for the purpose of this opinion. There has been a stipulation of facts. The plaintiff Eastern Color Printing Company (printer) is a letterpress printer of preprints. A preprint is a euphemism for the familiar advertising supplement which is inserted into newspapers and advertises the merchandise of a retailer. The plaintiff Caldor, Inc. (retailer) owns and operates retail department stores within the state of Connecticut.

The retailer contracts with the printer to produce preprints advertising its merchandise. The retailer also contracts with newspaper publishers[1] for the sole purpose of inserting the preprints into the newspaper; it uses the circulation of the newspaper as a distribution vehicle for its advertising supplement. "Mechanicals" contain the material to be included in the advertising preprints and are submitted to the printer by the retailer. The mechanicals typically take the same form as advertising material which the retailer regularly submits to newspaper advertising departments and must conform to each newspaper's specifications as to size, packing format and content. The retailer and each newspaper agree on the date of insertion of the preprint which contains, in addition to the advertisements, the name and date of the newspaper into which it is to be assembled and a designation that it is a supplement.

The printer arranges for the delivery of the preprints to the newspaper publishers and, once accepted, the retailer and the printer relinquish all right to custody, ownership or authority over them. The newspaper personnel exercise complete control over the advertising supplements and assemble them into each newspaper.

On September 12, 1975, the tax commissioner for the state of Connecticut issued a notice of a proposed sales tax assessment in the amount of $76,727.56 against the printer for the period between July 1, 1971, through December 31, 1974,

---

[1] Some newspaper publishers themselves possess the ability and facilities to print preprints for distribution in their newspapers. In this appeal, we concern ourselves with the case where the printer, retailer and distributor are three distinct entities.

based on the printer's charges to all its customers for the printing of preprints. The printer protested the tax assessment.

On or about July 28, 1976, the retailer filed a claim[2] for a refund of $47,025, which represented the sales tax paid by the retailer to the printer.

Both the printer and the retailer claimed that the sale of preprints was exempt from the sales tax either because they were "newspapers" within the meaning of General Statutes § 12-412 (f) or because they were materials which became an ingredient or component part of a tangible personal property to be sold within the meaning of General Statutes § 12-412 (r).[3]

After two separate hearings the tax commissioner, acting by his deputy, decided that the exemptions cited by the retailer and the printer, respectively, did not apply and that the sales of the preprints were subject to the sales tax authorized by General Statutes § 12-408.[4]

Both the retailer and printer appealed the commissioner's decision to the Superior Court. See General Statutes § 12-422. After the parties closed the pleadings, they entered into a stipulation of facts and reserved the action for the consideration and advice of this court on three questions. See Practice Book §§ 3133 and 3134.

---

[2] The retailer made his claim for a refund pursuant to General Statutes § 12-425 which provides in part: "(1) CREDITS AND REFUNDS. If the commissioner determines that any amount, penalty or interest . . . has been erroneously or illegally collected or computed, . . . the excess amount collected or paid shall be credited on any amounts then due and payable from the person under this chapter, and the balance shall be refunded . . . ."

[3] These statutes are discussed infra.

[4] See footnote 8, infra.

## I

The first question is set out: Do preprints qualify as "newspapers," within the meaning of General Statutes § 12-412 (f), so that they are exempt from the sales tax?

Section 12-412 (f)[5] provided at the time of the transaction in question that the sales tax shall not apply to the gross receipts from the "[s]ales of newspapers." Since exemptions to the sales tax operate, if at all, when the sale is made, in order for the plaintiffs to take advantage of this exemption, the definition of "newspapers" must include preprints at the time they are printed and delivered by the printer. *Connecticut Theater Foundation, Inc.* v. *Brown,* 179 Conn. 672, 675, 427 A.2d 863 (1980); *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 609, 362 A.2d 847 (1975).

Since "newspaper" is not defined by any Connecticut statute, regulation or opinion known or cited to us, the term must be construed according to the commonly approved usage of the language. General Statutes § 1-1; *Rosnick* v. *Aetna Casualty & Surety Co.,* 172 Conn. 416, 422, 374 A.2d 1076 (1977). The word must be given its plain and ordinary meaning; *Carlson* v. *Kozlowski,* 172 Conn. 263, 266, 374 A.2d 207 (1977); and be interpreted in its natural and usual meaning unless the context indicates that a different one was intended. *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 505, 356 A.2d 139 (1975). Where a statute does not

---

[5] Section 12-412 (f) was amended by Public Acts 1978, No. 78-172, § 1 to read in part: "Taxes imposed by this chapter shall not apply to . . . (2) sales of and the storage, use or consumption of newspapers circulated among the public."

define a term it is appropriate to look to the common understanding expressed in the law and in dictionaries. *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981).

Taxing statutes are to be strictly construed. *Naylor* v. *Brown,* 166 Conn. 581, 587, 353 A.2d 709 (1974). Any statute creating a tax exemption must likewise be strictly construed against the party claiming an exemption. *Connecticut Theater Foundation, Inc.* v. *Brown,* supra, 677. If there is no ambiguity in the language of the statute, it does not become ambiguous merely because the parties contend for different meanings. In the absence of ambiguity it is unnecessary to resort to principles of statutory construction such as the resolution of ambiguity in favor of the taxpayer. *Harris Data Communications, Inc.* v. *Heffernan,* 183 Conn. 194, 198, 438 A.2d 1178 (1981).

"Newspaper" has been defined as "a paper that is printed and distributed daily, weekly, or at some other regular and usu. [sic] short interval and that contains news, articles of opinion (as editorials), features, advertising, or other matter regarded as of current interest . . . ." Webster, Third New International Dictionary; see Black's Law Dictionary (5th Ed.) for a similar definition.

Although we have not yet defined the term, other courts have done so. A newspaper is " '[a] paper printed and distributed, at stated intervals, usually daily or weekly, to contain news, advocate opinions, etc., now usually containing also advertisements and other matters of public interest . . . .' " *Christopher* v. *American News Co.,* 171 F.2d 275, 281 (7th Cir. 1948), quoting Webster, Second International Dictionary. "The present-day newspaper, in addi-

tion to carrying 'items of general news interest,' contains enormous quantities of advertising, political comment, chess problems, cross word puzzles, . . . comics, and special features of unending variety. The sum total is known as a newspaper . . . ." *Friedman's Express* v. *Mirror Transportation Co.*, 71 F. Sup. 991 (D.N.J. 1947), aff'd, 169 F.2d 504 (3d Cir. 1948). See *In re Sterling Cleaners & Dyers*, 81 F.2d 596, 597 (7th Cir. 1936); *In re Paradise News Press*, 151 Cal. App. 2d 496, 498-99, 311 P.2d 555 (1957); *Nevada State Press Assn.* v. *Fax, Inc.*, 79 Nev. 82, 84-85, 378 P.2d 674 (1963); *East Suburban Press* v. *Township of Penn Hills*, 40 Pa. Cmwlth. 438, 440-41 n.2, 397 A.2d 1263 (1979).

All the definitions identify two common characteristics of a newspaper: (1) It is published at short, regular intervals, usually not exceeding a week, and (2) it routinely reports a myriad of topics so that it appeals, at least in part, to a wide spectrum of the general public. These two characteristics of newspapers are conspicuously absent from the preprints under consideration in this appeal. There is no stipulation that they were prepared at short, regular intervals[6] and since they consist entirely of one merchant's advertising, their appeal goes no further than a small select group of consumers interested in purchasing the mer-

---

[6] Since the stipulations make up the entire factual record, we are bound both by what they do and do not state. The relevant stipulation in the *Caldor, Inc.* case is set out: "Said supplements were inserted into newspapers by the newspaper publishers and resold to the public as sections of the newspapers of which they had become a part." In the *Eastern Color Printing Company* case, it provides that "preprints [are printed] for inclusion in newspapers by newspaper companies for distribution to their subscribers." We interpret these stipulations to mean that preprints may be a part of the Sunday or daily edition of newspapers, or both, and that they are not inserted at short, regular intervals.

chandise of a particular retailer. They cannot be newspapers at the time they are printed and delivered by the printer.

The printer and the retailer also argue that a "newspaper preprint incorporated into and distributed with a newspaper is an integral part of the newspaper and therefore [falls within the newspaper exemption of General Statutes § 12-412 (f)]." The source of authority for their proposition is *Friedman's Express* v. *Mirror Transportation Co.,* supra. The issue in that case involved an exemption from the Interstate Commerce Act for motor vehicles used exclusively "in the distribution of newspapers." Vehicles carrying comic sections of newspapers were held to be within the exemption, even though the comic sections were printed in a separate plant and transported from the printer to the newspaper for assembly with other sections. The court decided that a comic supplement fell within the definition of newspaper since it was an "integral part of the newspaper . . . because it has assumed the character of the journal of which it is a part," and it does not lose "its character when it is not in company with the other sections though destined for no other purpose than union with such other component parts of the total bulk, which later [is known as a newspaper]." Id., 992. In *Sears, Roebuck & Co.* v. *State Tax Commission,* 370 Mass. 127, 345 N.E.2d 893 (1976), the court used the reasoning of the *Friedman* case to include preprints within a definition of "newspaper" in a sales tax exemption statute similiar to the one we are considering.

We disagree with the holding in the *Sears, Roebuck & Co.* case for two reasons. The first, and

most important, concerns the identity of the parties at the time of the taxable event, i.e., when the ownership of the preprints passes from the printer to the retailer. The only parties in privity to the contract providing for the printing and delivery of the preprints are the retailer and the printer. The newspaper publisher has no enforceable interest at the time of the taxable event which, therefore, precludes any argument that the preprints are an integral part of the journal published by the newspaper company. In *Friedman's Express* v. *Mirror Transportation Co.,* supra, privity of contract existed between the printer of the comic sections and the newspaper publisher.

Second, there is a difference, not recognized by the Massachusetts Supreme Court, between supplemental advertising preprints and the comic sections. The preprint supplement is prepared by an entity totally independent of the publisher and is not made a part of the newspaper at short, regular intervals. It is inserted into the newspaper, not as an integral part designed to capture a regular audience, but rather to make use of the newspaper's extensive distribution system. On the other hand, a comic section is inserted at short, regular intervals. It becomes an integral part of the newspaper, not because it is physically folded within any particular edition, but because it contributes to the character of the newspaper. The comic section commands its own regular and faithful following just as do the local and world news sections, the sport page, the editorial page, the letters to the editor, the obituaries, the advice columns, and the classified advertising section. People buy a newspaper because all these sections are regularly collected together under one mast head thereby attracting a substantial por-

tion of the public and enhancing the appeal of the whole. An advertising supplement, inserted into the newspaper at irregular intervals, is not like a member of the family of sections making up the newspaper, but is more similar to the occasional house guest. There was no factual showing that any substantial number of readers ordinarily purchase a newspaper because it may contain an advertising supplement. It is inserted to gain access to large numbers of homes otherwise inaccessible to it.

Since preprints do not exhibit the characteristics of a newspaper at the time they are printed and delivered by the printer and since they do not assume the character of the edition into which they are inserted, a preprint does not fall within the commonly accepted definition of "newspaper." See *Green* v. *Home News Publishing Co.,* 90 So. 2d 295 (Fla. 1956); *Gasson* v. *Gay,* 49 So. 2d 525, 526 (Fla. 1950); *Simpson* v. *City of Highwood,* 372 Ill. 212, 23 N.E.2d 62 (1939); *Nevada State Press Assn.* v. *Fax, Inc.,* supra; *Hermenet* v. *Wykle,* 64 Misc. 2d 57, 314 N.Y.S.2d 204 (1970); *Shoppers Guide Publishing Co.* v. *Woods,* 547 S.W.2d 561 (Tenn. 1977). We do not think that in creating the exemption for "[s]ales of newspapers" in § 12-412 (f), the legislature had in mind the transactions before us.

## II

The second question for advice is: Are preprints exempt from the sales tax because they are materials which become an ingregient or component part of tangible personal property to be sold? This exemption is based on General Statutes § 12-412 (r) which provided an exemption from the sales tax of

the "[s]ales of . . . materials . . . which become an ingredient or component part of tangible personal property to be sold . . . ." [7]

As discussed above, we do not consider the preprint to be part of the collection of sections that together comprise a newspaper. It is an intruder within the folds of the edition with which it is connected and is inserted, not as a new member of the family of sections making up the paper, but rather to take advantage of the welcome a newspaper receives from large numbers of people. A newspaper published without a preprint would not be unique in any way. On the other hand, the absence from the newspaper of even such features as the household tips, the television guide, the medical tips, the advice columns or any other regular section would be immediately noticed by a significant number of readers.

"Ingredient" is defined as "something that enters into a compound or is a component part of any combination or mixture . . ." and the definition of "component" includes "a constituent part" or "serving or helping to constitute." Webster, Third New International Dictionary. Preprints become finished products as soon as they are printed and use the newspaper only as a mode of distribution. Their physicial presence in the newspaper does not change that edition's character. They do not become an ingredient or component part of the newspaper and this conclusion precludes the applicability of the § 12-412 (r) exemption.

[7] Public Acts 1973, No. 73-288, § 4 and Public Acts 1978, No. 78-71, § 3 amended a portion of this section not relevant to the issue before us.

## III

The final question which we must consider is as follows: Are preprints printed for resale and therefore not subject to a sales tax under General Statutes § 12-408?[8] This section imposes on retailers a sales tax based on the retail sale of tangible personal property. A "sale" is defined by statute to mean "[a]ny transfer of title, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration." General Statutes § 12-407 (2) (a). A "retail sale" "means and includes a sale for any purpose other than resale in the regular course of business of tangible personal property . . . ." General Statutes § 12-407 (3). A presumption exists "that all gross receipts are subject to the [sales] tax until the contrary is established. The burden of proving that a sale of tangible personal property . . . is not a sale at retail is upon the person who makes the sale . . . ." See General Statutes § 12-410 (1).[9]

Our analysis of the first two questions can lead us only to one conclusion. Since we have decided that a preprint neither becomes an integral part of the newspaper nor assumes the character of the edition into which it is inserted, it follows that no

[8] In July, 1971, General Statutes § 12-408 provided in part: "For the privilege of making any sales as defined in section 12-407, at retail, in this state for a consideration, a tax is hereby imposed on all retailers at the rate of five per cent . . . of the gross receipts of any retailer from the sale of all tangible personal property sold at retail . . . ." Subsequent amendments have not materially changed this section except for increasing the tax rate.

[9] Public Acts 1975, No. 75-213, § 24 amended this section by inserting the words "or service" after the words "tangible personal property."

portion of a newspaper's purchase price is given as consideration for any preprint it might contain. A subscriber gives his consideration in exchange for the collection of sections that routinely make up the newspaper; the preprint is not part of that collection but merely uses the newspaper as a distribution vehicle. There is no sale of the preprint at the time the newspaper is purchased. Therefore, the taxable event occurs when the printer sells the preprints to the retailer.

In the case of *Caldor, Inc.* v. *Gerald J. Heffernan, Tax Commissioner,* the questions, with the corresponding answers, upon which our advise is desired are as follows:

1. Does said advertising matter qualify as "newspapers," within the meaning of § 12-412 (f) of the General Statutes, so that it is exempt from sales tax? Answer: No.

2. If said advertising matter is not, in itself, "newspapers," within the meaning of § 12-412 (f) of the General Statutes, is it material which becomes an ingredient or component part of tangible personal property to be sold, i.e., "newspapers," within the meaning of § 12-412 (r) of the General Statutes, so that it is exempt from sales tax? Answer: No.

3. Do the transactions between Caldor and the printer qualify as "retail sales" subject to sales tax? Answer: Yes.

In the case of *Eastern Color Printing Co.* v. *Connecticut Tax Commissioner,* the questions, with the corresponding answers, upon which our advice is desired are as follows:

1. Are newspaper preprints "newspapers," within the meaning of § 12-412 (f) of the General Statutes, so that they are exempt from sales tax? Answer: No.

2. If newspaper preprints are not, in themselves, "newspapers" within the meaning of § 12-412 (f) of the General Statutes, are they materials which become an ingredient or component part of tangible personal property to be sold, i.e., "newspapers" within the meaning of § 12-412 (r) of the General Statutes, so that they are exempt from sales tax? Answer: No.

No costs will be taxed in favor of either party.

In this opinion the other judges concurred.