PETER GALLACHER ET AL. *v.* COMMISSIONER
OF REVENUE SERVICES
(14194)

SHEA, CALLAHAN, GLASS, COVELLO, BORDEN, BERDON
and SANTANIELLO, Js.

Argued October 29, 1991—decision released February 11, 1992

*Thomas P. Heslin,* with whom was *Frederick L. Cadman,* for the appellants (plaintiffs).

*Robert L. Klein,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

CALLAHAN, J. This is an appeal from the action of the defendant, the commissioner of revenue services (commissioner), denying the plaintiffs' publications an exemption from the Connecticut use tax as "newspapers" pursuant to General Statutes (Rev. to 1981) § 12-412 (f)[1]

---

[1] General Statutes (Rev. to 1981) § 12-412 (f) provides in pertinent part: "EXEMPTIONS. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items . . .

"(f) NEWSPAPERS AND MAGAZINES. (1) Sales of magazines by subscription; (2) sales of and the storage, use or other consumption of newspapers circulated among the public."

and levying use tax assessments.[2] The commissioner's assessments were sustained by a state trial referee.

In the Superior Court the parties stipulated to the following pertinent facts. The plaintiffs are the owners and publishers of a weekly publication known as "TV Facts."[3] "TV Facts" contains television listings for the coming week and also contains features found in " 'shoppers' publications,' " including an entertainment world gossip column, a crossword puzzle and an astrology column. "TV Facts" contains no articles of opinion, such as editorials, advocates no opinions, and does not carry items of general news interest. The Middlesex News Corporation of Framingham, Massachusetts, prints "TV Facts" under contract with the various plaintiffs, who, in turn, distribute the publications. "TV Facts" is distributed weekly to places of business in Connecticut such as grocery stores and drug stores where it is available to the general public. No charge is made either to the stores or to the public for copies of "TV Facts." The publications are delivered to the plaintiffs by contract or common carrier and are

That section has been recodified as General Statutes § 12-412 (6), and amended by Public Acts, Spec. Sess., June, 1991, No. 91-3, § 114 to read: "Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use, or other consumption in this state with respect to the following items . . . (6) (A) Sales of magazines by subscription; (B) sales of newspapers by subscription."

[2] "The difference between a sales and a use tax is that generally a sales tax is imposed on items acquired within the state and a use tax is imposed on items acquired outside the state for use within this state." *White Oak Corporation* v. *Department of Revenue Services,* 198 Conn. 413, 419, 503 A.2d 582 (1986); see also *Hartford Parkview Associates Limited Partnership* v. *Groppo,* 211 Conn. 246, 255–56, 558 A.2d 993 (1989); *Fusco-Amatruda Co.* v. *Tax Commissioner,* 168 Conn. 597, 600, 362 A.2d 847 (1975).

[3] There are a number of plaintiffs who distribute "TV Facts" in different areas of the state. A designation of the area in which the publication is distributed is normally added to the sobriquet "TV Facts." For example, the publication of the named plaintiff is entitled "TV Facts of West Hartford."

distributed by the plaintiffs entirely within Connecticut. If "TV Facts" were mailed through the United States Postal Service, it would be accorded second class postal rates, which are applicable to all newspapers, magazines and periodicals.

The commissioner of revenue services assessed use taxes against the plaintiffs pursuant to General Statutes §§ 12-416 (1) and 12-411 (1).[4] The assessments were based on the estimated amount paid by the plaintiffs when they purchased the "TV Facts" publications in Massachusetts for distribution in Connecticut.

The plaintiffs timely petitioned the commissioner for a reassessment pursuant to General Statutes § 12-418 (1) and (2)[5] and requested an oral hearing. Thereafter, the

---

[4] General Statutes (Rev. to 1981) § 12-416 (1), as amended by Public Acts 1981, No. 81-64, § 8, provides in pertinent part: "ASSESSMENTS IF NO RETURN MADE. (1) ASSESSMENT; FAILURE TO FILE RETURN. If any person fails to make a return, the commissioner shall make an estimate of the amount of the gross receipts of the person or, as the case may be, of the amount of the total sales price of services or tangible personal property sold or purchased by the person, the storage, acceptance, consumption or other use of which in this state is subject to the use tax. The estimate shall be made for the period or periods in respect to which the person failed to make a return and shall be based upon any information which is in the commissioner's possession or may come into his possession. Upon the basis of this estimate the commissioner shall compute and determine the amount required to be paid to the state, adding to the sum thus arrived at a penalty of ten per cent of the amount or fifty dollars, whichever amount is greater. One or more assessments may be made for one or for more than one period."

General Statutes (Rev. to 1981) § 12-411 (1) provides in pertinent part: "THE USE TAX. (1) IMPOSITION AND RATE. An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state at the rate of seven and one-half per cent of the sales price of the property, and in lieu of said rate of seven and one-half per cent at the rate of three and one-half per cent with respect to the rendering of any service described in subdivision (i) of subsection (2) of section 12-407."

[5] General Statutes (Rev. to 1981) § 12-418 (1) and (2) provide in pertinent part: "REASSESSMENTS. (1) PETITION FOR REASSESSMENT. Any per-

deputy commissioner, who heard the matter on April 10, 1981, concluded that: (a) the plaintiffs' purchase of the publications in question from the printer was a purchase of tangible personal property, from a retailer for storage, acceptance, consumption or use in this state as those words are used in § 12-411 (1) which imposes the use tax; (b) the publications in question do not qualify as "newspapers" within the meaning of § 12-412 (f) and, therefore, are not exempt from the use tax; and (c) the imposition of the use tax did not violate the first amendment or the commerce or equal protection clauses of the United States constitution. The deputy commissioner affirmed the assessment.

The plaintiffs filed a timely appeal from the deputy commissioner's ruling to the Superior Court pursuant to General Statutes § 12-422.[6] In their appeal, the plain-

son against whom an assessment is made under section 12-415 or 12-416 or any person directly interested may petition for a reassessment within thirty days after service upon such person of notice thereof. If a petition for reassessment is not filed within the thirty-day period, the assessment becomes final at the expiration of the period.

"(2) ORAL HEARING. If a petition for reassessment is filed within the thirty-day period, the commissioner shall reconsider the assessment and, if the person has so requested in his petition, shall, in his discretion, grant the person an oral hearing and shall give him ten days notice of the time and place of the hearing. The commissioner may continue the hearing from time to time, as may be necessary, and may assign the conduct of such hearing to his representative."

[6] "[General Statutes (Rev. to 1981)] Sec. 12-422. APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under section 12-418, 12-421 or 12-425, may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain, which shall be accompanied by a citation to the commissioner of revenue services to appear before said court. Such citation shall be signed by the same authority, and such appeal shall be returnable at the same time and served and returned in the same manner, as is required in case of a summons in a civil action. The authority issuing the citation shall take from the appellant a bond or recognizance to the state of Connecticut, with surety to prosecute the appeal to effect and to comply with the orders and

tiffs claimed that their publications were newspapers and that, consequently, they and their publications were exempt from the Connecticut use tax because they were engaged in the "storage, use or other consumption of newspapers circulated among the public." They asserted, therefore, that they were entitled to an exemption from the use tax pursuant to § 12-412 (f), and a reversal of the deputy commissioner's decision.

The Superior Court by stipulation referred the plaintiffs' appeal to Hon. Charles S. House, state trial referee, who heard the matter as the trial court. After trial, the trial court reached the following conclusions. "I. The 'TV Facts' publications were . . . purchased by the plaintiffs from a retailer in Massachusetts for storage and use in Connecticut and were so stored and used. II. The publications were not 'newspapers' within the meaning of that term as used in General Statutes § 12-412 (f). . . . III. The imposition of the Connecticut use tax on 'TV Facts' publications [did] not violate the plaintiffs' constitutional rights. . . . IV. The burden of proving any claimed exemption to a tax [was] on the [plaintiffs]." The court affirmed the commissioner's use tax assessments. The plaintiffs subsequently filed a motion for reargument and to open judgment. After reargument, the trial court denied the motion to open judgment. The plaintiffs appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023. We affirm.

decrees of the court in the premises. Such appeals shall be preferred cases, to be heard, unless cause appears to the contrary, at the first session, by the court or by a committee appointed by it. Said court may grant such relief as may be equitable and, if such tax has been paid prior to the granting of such relief, may order the treasurer to pay the amount of such relief, with interest at the rate of six per cent per annum, to the aggrieved taxpayer. If the appeal has been taken without probable cause, the court may tax double or triple costs, as the case demands; and, upon all such appeals which are denied, costs may be taxed against the appellant at the discretion of the court, but no costs shall be taxed against the state."

I

On appeal, the plaintiffs have not contested the fact that their publications were "used" in Connecticut within the meaning of § 12-411 (1). The plaintiffs do, however, dispute the court's conclusion that their publications were not "newspapers" entitled to a use tax exemption pursuant to § 12-412 (f). The plaintiffs argue that the court, in concluding that their "TV Facts" publications were not newspapers, misconstrued this court's decision in *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 440 A.2d 767 (1981). We disagree.

In *Caldor, Inc.,* the question addressed was whether advertising inserts were "newspapers." This court, after finding that there was no statutory, regulatory or Connecticut case law definition of the word "newspaper," determined that the word should be given its plain, ordinary meaning and should be construed according to its commonly approved usage. Id., 570; see *Bolt Technology Corporation* v. *Commissioner of Revenue Services,* 213 Conn. 220, 228, 567 A.2d 371 (1989); *Rosnick* v. *Aetna Casualty & Surety Co.,* 172 Conn. 416, 422, 374 A.2d 1076 (1977); *Carlson* v. *Kozlowski,* 172 Conn. 263, 374 A.2d 207 (1977). We therefore examined dictionaries and case law from other jurisdictions to ascertain that meaning and usage. *Caldor, Inc.* v. *Heffernan,* supra, 570–72; see *State Medical Society* v. *Board of Examiners in Podiatry,* 208 Conn. 709, 717, 546 A.2d 830 (1988); *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Wisconsin Department of Revenue* v. *J. C. Penney Co.,* 108 Wis. 2d 662, 669–71, 323 N.W.2d 168 (1982). We cited two dictionary sources, that defined "newspaper" in similar fashion as " 'a paper that is printed and distributed daily, weekly, or at some other regular and usu. short interval and that contains news, articles of opinion (as editorials), features, advertising

or other matters regarded as of current interest . . . .' Webster, Third New International Dictionary; see Black's Law Dictionary (5th Ed.) for a similar definition." *Caldor, Inc.* v. *Heffernan,* supra, 571. We also noted that a federal court; *Christopher* v. *American News Co.,* 171 F.2d 275, 281 (7th Cir. 1948); in defining the term "newspaper" had indicated that among the ingredients of a newspaper were "news" and "opinions." *Caldor, Inc.* v. *Heffernan,* supra. We further cited several other state and federal cases, all of which included "news" as a component of a newspaper.[7] Id., 571–72.

In determining whether the advertising inserts at issue in *Caldor, Inc.,* qualified as "newspapers," however, we found it necessary to consider only two "common characteristics" of a newspaper that we said were contained in all the definitions. Id., 572. Those characteristics were: "(1) It is published at short, regular intervals, usually not exceeding a week, and (2) it routinely reports a myriad of topics so that it appeals, at least in part, to a wide spectrum of the general public." Id. Because in *Caldor, Inc.,* there was no stipulation or evidence that the advertising inserts in question appeared at short, regular intervals and because the inserts contained only information regarding Caldor sale items, it was not necessary to discuss other facets of the definition of a newspaper. We did not, however, eschew the dictionary definitions of the word "newspaper" or those articulated by the courts cited in the opinion, all of which included news as an essential ingredient of what is commonly understood to be a newspaper.

[7] *In re Sterling Cleaners & Dyers,* 81 F.2d 596, 597 (7th Cir. 1936); *Friedman's Express* v. *Mirror Transportation Co.,* 71 F. Sup. 991 (D.N.J. 1947), aff'd, 169 F.2d 504 (3d Cir. 1948); *In re Paradise News Press,* 151 Cal. App. 2d 496, 498–99, 311 P.2d 555 (1957); *Nevada State Press Assn.* v. *Fax, Inc.,* 79 Nev. 82, 84–85, 378 P.2d 674 (1963) (may be a newspaper if it also publishes news of a general character and of a general interest); *East Suburban Press, Inc.* v. *Township of Penn Hills,* 40 Pa. Commw. 438, 440–41 n.2, 397 A.2d 1263 (1979).

In fact, not surprisingly, the cases and authorities generally indicate that news is commonly thought to be a necessary component of a newspaper.[8] The Supreme Court of Tennessee, faced with the issue of what constitutes a "newspaper," agreed that the criteria in the regulations promulgated by that state's commissioner of revenue comported with the customarily accepted meaning of the term and determined that, in order to qualify for exemption from the sales and use tax as a "newspaper," a publication must contain " 'general news of the day, information of current events, [or] news of importance and of current interest to the general public.' " *Shoppers Guide Publishing Co.* v. *Woods,* 547 S.W.2d 561, 563 (Tenn. 1977); *Memphis Shoppers News, Inc.* v. *Woods,* 584 S.W.2d 196, 199 (Tenn. 1979). Other courts confronted with the question, "What is a newspaper?" have formulated comparable common sense answers. "[P]ublications and pennysavers such as the petitioner's which do not contain news articles or expressions of opinion are generally not newspapers within the meaning of the Tax Law . . . ." *Scotsmen Press* v. *Tax Appeals Tribunal,* 165 App. Div. 2d 630, 634, 569 N.Y.S.2d 991 (1991). The applicable test to determine whether a publication is a newspaper is one of " 'common understanding.' " If "[t]here are no news articles or expressions of opinion," a publication is not a newspaper. *Twin Coast Newspapers, Inc.* v. *State Tax Commission,* 101 App. Div. 2d 977, 477 N.Y.S.2d 718 (1984). "In distinguishing between a newspaper and a shopper for purposes of the exemption, the question is whether the primary purpose of the publication is the dissemination of news or the advertising of business concerns." *Campus Communications* v. *Department of Revenue,* 473 So. 2d

---

[8] The primary definition of the word "news" is "a report of recent events." Webster, Ninth New Collegiate Dictionary; see also The Random House Dictionary of the English Language (2d Ed.).

1290, 1295 (Fla. 1985).[9] "In the ordinary understanding, a newspaper may be defined generally as a publication . . . containing news, that is, reports of happenings of recent occurrence and of varied character, including political, social, moral, religious, and other subjects of similar nature, local or foreign, and intended for the information of the general reader." 58 Am. Jur. 2d, Newspapers, Etc. § 1; see also 66 C.J.S., Newspapers § 1.

An examination of the format of the plaintiffs' publications reveals that they do not fit within the common understanding of what one would envision as a newspaper. Although the plaintiffs' publications contain some "features" as well as television listings, they do not "routinely report a myriad of topics" as contemplated by the test in *Caldor, Inc.,* and certainly do not contain what is generally thought to be news. Moreover, the primary purpose of the plaintiffs' publication is obviously not the dissemination of news but the advertising of business concerns. The mere publication of universally available television listings and some "features" do not make a newspaper. See *Matter of Assessment of Additional North Carolina and Orange County Use Taxes Against Village Publishing Corporation,* 312 N.C. 211, 322 S.E.2d 155 (1984), appeal dismissed, 472 U.S. 1001, 105 S. Ct. 2693, 86 L. Ed. 2d 710 (1985). We conclude that if we afford the word "newspaper" its commonly accepted meaning, as we must in the absence of a clearly expressed legislative intent to the contrary, then the plaintiffs' publications

[9] In a case remarkably similar to the present case, where the publication in question contained features and announcements of local interest, the court found that it did not qualify as a "newspaper" for the purpose of the sales and use tax. *Matter of Assessment of Additional North Carolina and Orange County Use Taxes Against Village Publishing Corporation,* 312 N.C. 211, 322 S.E.2d 155 (1984), appeal dismissed, 472 U.S. 1001, 105 S. Ct. 2693, 86 L. Ed. 2d 710 (1985).

are not "newspapers" and, therefore, are not entitled to the exemption accorded "newspapers" by § 12-412 (f). See *Kilpatrick* v. *Board of Education,* 206 Conn. 25, 28, 535 A.2d 1311 (1988); *Ganim* v. *Roberts,* 204 Conn. 760, 763, 529 A.2d 194 (1987).

## II

The plaintiffs next contend that the trial court improperly concluded "that the commissioner was permitted to apply a content-based test as the basis for denying the newspaper exemption to [the plaintiffs'] publications, in violation of first and fourteenth amendment guarantees of freedom of the press."

The trial of a sales and use tax appeal taken pursuant to § 12-422 is a trial de novo. *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 145, 527 A.2d 679 (1987). To state, therefore, that the commissioner "was permitted" by the trial court to do anything is to misconstrue the proceeding. The commissioner had already acted when this matter was before the trial court and it was simply the function of the trial court to determine the legality of that action. It is the trial court's decision that is appealed from, not that of the commissioner, and it is the trial court's decision that we review.

The trial court concluded that the plaintiffs' "publications were not 'newspapers' within the meaning of that term as used in General Statutes Section 12-412 (f) . . . ." For that conclusion the court cited *Caldor, Inc.* v. *Heffernan,* supra, 570–71, and an annotation in 25 A.L.R.4th 750, entitled "What constitutes newspapers, magazines, periodicals, or the like, under sales or use tax law exemption." A review of those citations clearly reveals that the trial court based its decision not on the content of the plaintiffs' publications but rather the absence of most of the features usually found in newspapers. Neither *Caldor, Inc.,* nor the cases cited in 25 A.L.R.4th 750, discuss the content or viewpoint

of any material that appears in any publication but rather discuss the type of material, regardless of its content or viewpoint, that must appear in a publication to have it constitute a newspaper. For example, a universal requirement for a newspaper is that it contain news.

Clearly, the trial court determined that "TV Facts" lacked essential ingredients in its form to constitute a newspaper under the statute. There is certainly no indication that it based its conclusion on the content or viewpoint of any material that appeared in the plaintiffs' publications. In fact, a discussion of the content of any of the material that appeared in "TV Facts" is conspicuous by its absence. The trial court simply found differences between the plaintiffs' publications and what is ordinarily understood to be a newspaper based on noncontent factors. *Hearst Corporation* v. *Iowa Department of Revenue & Finance,* 461 N.W.2d 295, 301 (Iowa 1990). We find no merit to this claim of the plaintiffs.

### III

We next address the plaintiffs' claims that disallowing the exemption provided by § 12-412 (f) to their publications denied them their constitutionally guaranteed rights of freedom of the press and equal protection of the law.

### A

It should first be made clear that the first amendment "does not prohibit all [government] regulation of the press." *Minneapolis Star & Tribune* v. *Minnesota Commissioner of Revenue,* 460 U.S. 575, 581, 103 S. Ct. 1365, 75 L. Ed. 2d 295 (1983); *Hope Evangelical Lutheran Church* v. *Iowa Department of Revenue & Finance,* 463 N.W.2d 76 (Iowa 1990), cert. denied, U.S. , 111 S. Ct. 1585, 113 L. Ed. 2d 649 (1991).

Generally applicable economic regulations may be imposed on the press by the states and the federal government without causing constitutional problems. *Jimmy Swaggart Ministries* v. *Board of Equalization,* 493 U.S. 378, 392, 110 S. Ct. 688, 107 L. Ed. 2d 796 (1990); *Minneapolis Star & Tribune* v. *Minnesota Commissioner of Revenue,* supra, 581. Further, the first amendment is not interpreted so broadly as to require that all media need be taxed in the same way. *Hearst Corporation* v. *Iowa Department of Revenue & Finance,* supra, 301. It is only when "a discriminatory tax on the press burdens rights protected by the First Amendment" that problems arise. *Arkansas Writers' Project, Inc.* v. *Ragland,* 481 U.S. 221, 227, 107 S. Ct. 1722, 95 L. Ed. 2d 209 (1987). A legislature cannot enact a special tax that applies only to the press or that singles out and taxes exclusively a small group of publications, or that taxes publications on the basis of their content, without shouldering the heavy burden of demonstrating that its action is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. *Leathers* v. *Medlock,* 499 U.S.     , 111 S. Ct. 1438, 1445, 113 L. Ed. 2d 494 (1991); *Arkansas Writers' Project, Inc.* v. *Ragland,* supra, 228; *Minneapolis Star & Tribune* v. *Minnesota Commissioner of Revenue,* supra, 581, 591. The United States Supreme Court has found that there exists too great a potential for abuse if the states are permitted to tax the press exclusively or to tax selected members of the press. *Minneapolis Star & Tribune* v. *Minnesota Commissioner of Revenue,* supra, 592. Such selective taxation "is constitutionally suspect when it threatens to suppress the expression of particular ideas or viewpoints." *Leathers* v. *Medlock,* supra, 1443.

Connecticut sales and use tax legislation does not, however, fashion a tax that is applicable only to the press or to certain publications or that singles out and

taxes exclusively a small group of publications, or that taxes on the basis of content. To the contrary, the Connecticut sales and use tax is a broad based, generally applicable tax that, for the most part, taxes the gross receipts from all retail sales of tangible personal property and the use or storage of all personal property in this state, including most publications. See General Statutes c. 219. There is no indication that Connecticut has targeted the media or publications such as the plaintiffs' in a purposeful attempt to interfere with their first amendment activities. Nor is the tax one that is structured to raise suspicion that it was intended to do so. Unlike the taxes that the United States Supreme Court has invalidated as too selective, the Connecticut sales and use tax is a general tax that "has not selected a narrow group to bear fully the burden of the tax." *Leathers* v. *Medlock,* supra, 1444; see *Arkansas Writers' Project, Inc.* v. *Ragland,* supra, 228; *Minneapolis Star & Tribune* v. *Minnesota Commissioner of Revenue,* supra, 575; *Grosjean* v. *American Press Co.,* 297 U.S. 233, 56 S. Ct. 444, 80 L. Ed. 660 (1936). "When the state imposes a generally applicable tax, there is little cause for concern. We need not fear that a government will destroy a selected group of taxpayers by burdensome taxation if it must impose the same burden on the rest of its constituency. See *Railway Express Agency, Inc.* v. *New York,* 336 U.S. 106, 112–13, 69 S. Ct. 463, 467, 93 L. Ed. 533 (1949) (Jackson, J., concurring.)" *Minneapolis Star & Tribune* v. *Minnesota Commissioner of Revenue,* supra, 585. Because the Connecticut use tax has not singled out the press, "[it] does not therefore threaten to hinder the press as a watchdog of government activity." *Leathers* v. *Medlock,* supra, 1444.

Moreover, the fact that "newspapers" are the beneficiaries of an exemption from the sales and use tax does not mean that all other publications must be

extended the same subsidy or a first amendment violation results.[10] *Hearst Corporation* v. *Iowa Department of Revenue & Finance,* supra, 303–304. While government may not deny a benefit to a person because he exercises a constitutional right; see *Perry* v. *Sindermann,* 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972); government is not required to subsidize that right. *Regan* v. *Taxation With Representation of Washington, Inc.,* 461 U.S. 540, 545, 103 S. Ct. 1997, 76 L. Ed. 2d 129 (1983); *Cammarano* v. *United States,* 358 U.S. 498, 513, 79 S. Ct. 524, 3 L. Ed. 2d 462 (1959). Because the government chooses to subsidize one protected right, it does not mean that "it must subsidize analogous counterpart rights." *Rust* v. *Sullivan,* 500 U.S.   , 111 S. Ct. 1759, 1773, 114 L. Ed. 2d 233 (1991). Consequently, the legislature may choose to subsidize one form of publication, such as newspapers, by means of a tax exemption without being required by the first amendment to subsidize other forms of publications such as "TV Facts." See *Regan* v. *Taxation With Representation of Washington, Inc.,* supra. The "[l]egislature may subsidize one form of publication (i.e., 'newspapers'), but is not required by the first amendment to also subsidize other forms of publications as long as it has a rational noncontent basis for doing so." *Hearst Corporation* v. *Iowa Department of Revenue & Finance,* supra, 304. Different taxation of speakers "does not implicate the First Amendment unless the tax is directed at, or presents the danger of suppressing, particular ideas." *Leathers* v. *Medlock,* supra, 1447.

In Connecticut all forms of written media are free to exercise their first amendment privileges without

---

[10] "[T]ax exemptions and tax deductibility are a form of *subsidy* that is administered through the tax system." (Emphasis added.) *Regan* v. *Taxation With Representation of Washington, Inc.,* 461 U.S. 540, 544, 103 S. Ct. 1997, 76 L. Ed. 2d 129 (1983).

interference. The legislature, however, has chosen to favor only newspapers with a sales tax exemption. As long as the legislature had a legitimate noncontent reason for doing so,[11] the first amendment rights of other publications are not violated. Id.

In summary, because the Connecticut sales and use tax is a general tax that does not target the media or discriminate among media sources of the same type and therefore does not subject only a small, select number of publications to the tax, and because the exemption contained in the statute is not content based, the tax, which exempts newspapers but not the plaintiffs' publications, is not a suspect tax. The legislature "has chosen simply to exclude or exempt certain media from a generally applicable tax." *Leathers* v. *Medlock,* supra, 1447. There is nothing in that statutory scheme that suggests censorship or intimates that Connecticut's broad based, content neutral use tax is likely to stifle the free exchange of ideas. We conclude that exempting newspapers from the generally applicable use tax while not exempting other media does not violate the first amendment. Id.

### B

The plaintiffs next argue that the extension of a sales and use tax exemption to newspapers but not to their publications violates their constitutional right to equal protection. The first step in confronting the plaintiffs' equal protection argument is to ascertain whether the rational basis test or the more stringent strict scrutiny test applies. We conclude that it is the rational basis test.

In tax matters, more so than in other fields, legislatures possess considerable liberty in classification.

---

[11] That legitimate purpose is the government's interest in the wide, inexpensive dissemination of newspapers. See infra, p. 183.

*Regan* v. *Taxation With Representation of Washington, Inc.,* supra, 547; *Madden* v. *Kentucky,* 309 U.S. 83, 87–88, 60 S. Ct. 406, 84 L. Ed. 590 (1940); see also *San Antonio Independent School District* v. *Rodriguez,* 411 U.S. 1, 40–41, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973); *Kellems* v. *Brown,* 163 Conn. 478, 487–90, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973). "Generally, statutory classifications [as to what is or is not to be taxed, such as that created by § 12-412 (f),] are valid if they bear a rational relation to a legitimate governmental purpose. *Regan* [v. *Taxation With Representation of Washington, Inc.,* supra,] 547 . . . ." *Hearst Corporation* v. *Iowa Department of Revenue & Finance,* supra, 305. If a subsidy in the form of a tax exemption is granted to a particular variety of publication such as newspapers, as long as the exemption is not aimed at the suppression of ideas, and does not interfere with the fundamental rights of those publications not exempted, the legislature has broad power to encourage action deemed to be in the public interest. Furthermore, as noted earlier, all publications do not have to be afforded the same exemption. See *Regan* v. *Taxation With Representation of Washington, Inc.,* supra, 550; see also *Maher* v. *Roe,* 432 U.S. 464, 476, 97 S. Ct. 2376, 53 L. Ed. 2d 484 (1977); *Hearst Corporation* v. *Iowa Department of Revenue & Finance,* supra, 305. "Strict scrutiny is not required whenever the legislature subsidizes some speech but not all speech." *Regan* v. *Taxation with Representation of Washington, Inc.,* supra, 548. "[A] legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny. *Buckley* v. *Valeo,* [424 U.S. 1, 96 S. Ct. 612, 46 L. Ed. 2d 659 (1976)]." Id., 549. Therefore, the legislature's decision to subsidize newspapers by means of a tax exemption, but not to subsidize other forms of publications such as the plain-

tiffs', does not require strict scrutiny but, rather, is subject to review under the rational basis standard. Id., 548–49.

Under that standard, a legislatively enacted sales and use tax exemption will withstand judicial scrutiny if it bears a rational relationship to a legitimate government purpose. We determine that the newspaper exemption of § 12-412 (f) possesses that rational relationship. The state has a legitimate interest in encouraging the inexpensive and wide dissemination of newspapers in order that its citizens might read about and be informed of current affairs, and thereby become more cognizant of, among other things, the workings of their government. Newspapers also enhance the general knowledge of the populace and contribute to its literacy. Therefore, to make newspapers available at the lowest possible price is a legitimate government purpose to which the sales and use tax exemption for newspapers bears a rational relationship. See *Hearst Corporation* v. *Iowa Department of Revenue & Finance,* supra, 306. We find no merit in the plaintiffs' equal protection claim.[12]

Finally, the plaintiffs argue that the trial referee was incorrect in placing upon them the burden of proving that they were entitled to the claimed exemption. It is the plaintiffs' contention that the burden of justifying the tax should have been upon the commissioner. The plaintiffs' argument is premised on their contention that the commissioner's denial of a use tax exemption for their publications was based on their content

---

[12] The plaintiffs also contend that they were deprived of equal protection of the law because their publications are subject to the use tax, but the similar television guides inserted in newspapers are not. Those television guides, however, like the comics and unlike the advertising inserts in *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 440 A.2d 767 (1981), become an integral part of the newspaper. See *Friedman's Express, Inc.* v. *Mirror Transportation Co.,* 71 F. Sup. 991, 992 (D.N.J. 1947), aff'd, 169 F.2d 504 (3d Cir. 1948).

and that the denial of the exemption created a tax that targeted a small, select group of "newspapers." See *Arkansas Writers' Project, Inc.* v. *Ragland,* supra, 231, 234. Since we have determined that the denial of the exemption was not content based and that the plaintiffs' publications are not "newspapers," the plaintiffs' argument has no merit. We conclude, therefore, that the trial court was correct when it strictly construed the statute against the plaintiffs and placed upon them the burden of proving that the assessment was in error. *Stop 'N Save, Inc.* v. *Department of Revenue Services,* 212 Conn. 454, 462, 562 A.2d 512 (1989).[13]

---

[13] The plaintiffs cite three cases decided by other state courts that they argue require a different result. The first two are Tennessee cases decided by the Tennessee Supreme Court on the same day. See *Southern Living, Inc.* v. *Celauro,* 789 S.W.2d 251 (Tenn. 1990), cert. denied,      U.S.   , 111 S. Ct. 1639, 113 L. Ed. 2d 734 (1991); *Newsweek, Inc.* v. *Celauro,* 789 S.W.2d 247 (Tenn. 1990), cert. denied,      U.S.   , 111 S. Ct. 1639, 113 L. Ed. 2d 734 (1991). Those cases were decided on analogous facts and issues. The issue was whether a sales and use tax exemption afforded newspapers but not magazines violated the first amendment rights of the magazine publishers. The Tennessee Supreme Court determined that any distinction between newspapers and magazines was necessarily "content based" and therefore placed a heavy burden on the state to prove a compelling justification for the selective content based taxation of the plaintiffs' publications. The court determined that such a justification was not demonstrated and therefore held that the tax was unconstitutional.

In this case, we have determined that the distinction drawn by the trial referee between the plaintiffs' publications and newspapers was not content based and that the state was required to show only a rational relationship between the use tax exemption and a legitimate government purpose. The cases, therefore, are distinguishable. Moreover, we do not necessarily agree with the Tennessee court that a distinction cannot be drawn between a magazine and a newspaper based on form rather than content and that the legislature may not opt to tax one and not the other without creating a first amendment violation.

The third case relied on by the plaintiffs is *Department of Revenue* v. *Magazine Publishers of America, Inc.,* 565 So. 2d 1304 (Fla. 1990), decided by the Florida Supreme Court. Therein the court concluded simply that a sales and use tax statute that differentiated between newspapers and magazines burdened first amendment rights and was unconstitutional in the absence of a showing that such differential treatment was necessary to serve a compelling state interest and was narrowly drawn to achieve that end. The

The judgment is affirmed.

In this opinion the other justices concurred.

department of revenue services applied for a writ of certiorari to the United
States Supreme Court. The court granted the writ and remanded the case
to the Florida Supreme Court for further consideration in light of *Leathers*
v. *Medlock*, 499 U.S.    , 111 S. Ct. 1438, 113 L. Ed. 2d 494 (1991). *Depart-
ment of Revenue* v. *Magazine Publishers of America, Inc.*, supra.

*Leathers* held that a differential burden on speakers is insufficient to raise
first amendment concerns and that a differential tax even between mem-
bers of the same medium does not implicate the first amendment unless
the tax is directed at, or presents the danger of suppressing particular ideas.
*Leathers* v. *Medlock*, supra, 1445. The remand, therefore, appears to por-
tend a different result. We are unpersuaded.