[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION Re: Motion for Reference to Three Judge Panel
Citing General Statutes §§ 13a-76 and 52-434a (b), the plaintiff CT Page 5459 Commissioner has moved that this reassessment appeal be referred to the Chief Court Administrator for the appointment of a panel of three judges and/or judge trial referees. The Commissioner had assessed the damages in this matter at $422,600. Because this amount is in excess of $200,000, the Commissioner contends that the court must refer the case for the appointment of a three-judge and/or referee panel.
General Statutes § 52-434a (b) states:
 "In condemnation proceedings in which the assessment fixed by the condemning authority exceeds the sum of two hundred thousand dollars, the court may, at the request of either party, or on its motion, refer the proceedings to the chief court administrator for referral to a committee of three such referees who, sitting together, shall hear and decide the matter. . ."
The general rule of statutory construction is that "shall" connotes a mandatory duty as contrasted with "may," which implies permissive action. Caulkins v. Petrillo 200 Conn. 713, 717, 513 A.2d 43 (1986). The Commissioner nonetheless contends that the word "may" is mandatory in this case rather than directory, and claims to find support for this contention in the testimony of then Chief Justice Raymond Baldwin before the Judiciary Committee at the time of the passage of this legislation. The pertinent portion of Chief Justice Baldwin's testimony is quoted below:
 "The next section deals with condemnation proceedings, where the amount involved is one hundred thousand dollars or more. We are oftentimes faced, as a single referee, in deciding a case that involves a million dollars in some land taking of some kind, either for redevelopment or for highway purposes, and it's a pretty serious responsibility for one man to listen to one group of appraisers say the land is worth a hundred thousand dollars and another group of appraisers who say it's worth three million. It's quite a decision to make and we oftentimes wish that we could have the advice, and as a matter of fact, we seek the advice, of our fellow referees in a matter of that kind, but we figured it would be an awfully good thing if, at the request of the parties or upon the motion of the court itself where a hundred thousand dollars or more is involved, that three referees hear the case."
CT Page 5460 "The primary rule of statutory construction is that `[i]f the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; Houston v. Warden 169 Conn. 247, 251,363 A.2d 121 (1975); Hurlbut v. Lemelin, 155 Conn. 68, 73, 230 A.2d 36
(1967); and thus there is no need to construe the statute. Bell v.Planning and Zoning Commission, 173 Conn. 223, 226, 377 A.2d 299 (1977);Houston v. Warden, supra 251; Hartford Hospital v. Hartford, 160 Conn. 370,375-76, 279 A.2d 561 (1971).'" State v. Smith, 194 Conn. 213, 221
(1988), quoting Anderson v. Ludgin, 175 Conn. 545, 552, 400 A.2d 712
(1978). "The words of [a] statute `are to be given their commonly approved meaning, unless a contrary intent is clearly expressed.'Holmquist v. Manson, 168 Conn. 389, 393, 362 A.2d 971 (1975); State v.Antrum, 185 Conn. 118, 122, 440 A.2d 839 (1981); General Statutes Sec. 1.1." State v. Kish, 186 Conn. 757, 764, 443 A.2d 1274 (1982).
It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. Caltabiano v. Planning Zoning Commission, 211 Conn. 662,666, 560 A.2d 975 (1989). Vaillancourt v. New Britain Machine/Litton,224 Conn. 382 (1993). "`In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature.' UnitedIlluminating Co. v. Groppo, 220 Conn. 749, 755, 601 A.2d 1005 (1992). `[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' (Citation omitted.) Office ofConsumer Counsel v. Dept. of Public Utility and Control, 234 Conn. 624,662 A.2d 1251 (1995); American Universal Ins. Co. v. DelGreco,205 Conn. 178, 193, 530 A.2d 171 (1987).
"In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." Sanzone v. Board ofPolice Commissioners, 219 Conn. 179, 187, 592 A.2d 912 (1991). In considering the intended operation of a statute, courts must also assume that the legislature, in enacting the statute, had in mind other relevant legislation then in existence. Danbury Rubber Company v. Local 402,145 Conn. 53, 138 A.2d 783 (1958).
A statute must be applied as its words direct. New Haven v. UnitedIlluminating Co., 168 Conn, 478, 485, 362 A.2d 785 (1975). "`Words in a statute must be given their plain and ordinary meaning and be interpreted in their natural and usual sense unless the context indicates that a different meaning was intended.'" Chavez v. Administrator UnemploymentComp. Act., 39 Conn. App. 441, 442, (1995), citing State v. Mattioli,210 Conn. 573, 576, 556 A.2d 584 (1989); Caldor, Inc. v. Heffernan,183 Conn. 566, 570, 440 A.2d 767 (1981). "Statutes should be construed so as not to reach an absurd or unreasonable result." State v. Campbell, CT Page 5461180 Conn. 557, 563, 429 A.2d 960 (1980).
That the legislature intended for the court to exercise discretion in entertaining requests for referral for the appointment of three referee panels is made clear by the fact that the legislature also provided for the court, on its own motion, to make such a referral. Had the legislature intended to require the formulation of a three judge panel, it would have used the word "shall" instead of "may," and it would not have given both the parties and the court the option of making the "request" for such a referral.
Moreover, the concerns expressed by the chief justice in 1967 suggest only that certain referees might find the task of deciding matters worth more than $200,000 ($100,000 at the time that the statute was enacted in 1967) daunting. In the Connecticut Judicial Branch of the 21st century, referees decide matters worth in excess of $200,000 on a regular basis every day, and the large number of active referees, now in excess of 75, assures that a referee undaunted by such a task is likely to be available somewhere in the state.
Most significantly, however, in 2001, the legislature amended General Statutes § 13a-76, which had required that all condemnation matters be heard only by referees, such that these matters could be referred to either judges or judge trial referees. Public Act 01-186. The Commissioner acknowledges that in light of this amendment, the Chief Court Administrator could appoint a panel of three judges, three referees, or some combination of the two if the court were to refer the matter to him for such an appointment pursuant to § 52-434a (b). When § 52-434a (b) is viewed in the context of § 13a-76 as amended, the reading urged upon the court by the Commission could thus require the Judicial Branch to divert three Superior Court judges from other duties to resolve a case with a potential value of $200,001. This is certainly a significant sum to the litigants, but hardly an unusual one for judges accustomed to resolving all manner of high stakes controversies. A legislature concerned about the wise use of judicial resources could not possibly have intended that the court tie up three Superior Court judges to hear a condemnation matter worth $200,001 simply because one of the parties decides to request it.
Presiding civil judges throughout the state have the responsibility of assigning cases wisely to the judges and referees in their judicial districts so as to make maximum use of the available judicial resources. The flexibility given to presiding judges by these two statutes, which permit the appointment of a panel of three judges and/or referees in appropriate cases but which also allow them to refer such matters to a single qualified individual when appropriate, is certainly what the CT Page 5462 legislature had in mind in enacting not only § 52-434a (b) but also the amendment to § 13-76 that provides for judges as well as referees to hear such matters.
In the instant matter, the Commissioner has provided no reason for the court to believe that referral to a single judge or referee would be inappropriate or an abuse of discretion. His only reason for requesting the appointment of a three judge and/or referee panel is his contention that the statute mandates it, and this court concludes that it does not.
The motion for referral of this matter to a panel of three therefore denied.
Jonathan E. Silbert, Judge