[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The issues in this tax appeal are (1) whether the day books CT Page 2679 used by the plaintiff to document its sales should have been accepted by the commissioner of revenue services (commissioner), which acceptance would preclude the commissioner from assessing additional sales and use taxes; and (2) whether a gun purchaser's possession of a federal license to sell firearms may be used in lieu of a resale certificate to prove that a gun sale was for resale and thus not subject to sales and use tax. We hold that the commissioner was not bound to accept the plaintiff's day books as a method of documenting sales. We also hold that the gun seller, which failed to obtain a resale certificate from a purchaser dealer, has not met its burden to prove that the sale was for resale simply because the purchaser held a federal license to sell firearms.
The plaintiff is a gun dealer, which was doing business during the period March 1, 1986 through February 28, 1989 at 2600 Berlin Turnpike, Newington, Connecticut. The commissioner audited the plaintiff business for that time period and assessed the plaintiff additional sales and use tax that is the subject of this appeal.
The plaintiff made sales during the audit period, which included sales at retail and sales for resale. During the audit period, the plaintiff kept a book for each year, known as the day book, in which daily entries were made. It was the plaintiff's intent that the day book record for each day all retail sales including sales of guns and clothing and sales of firearms for resale. At the end of each day, plaintiff would record in the day book the total sales for that day. The day book did not itemize each retail sale subject to tax, but simply stated a total amount for all sales. For example, on February 9, 1989, the day book (Plaintiff's Exhibit C) contained information that can be summarized as follows:
 Four guns repurchased for a total price of $585.00 Clothes $198.75 Three sales for resale were listed: 1. G. Ku $449.95 2. Frankl gun Repair $369.95 3. A. Pechulis $289.95
The bottom of the page for February 9, 1989, contained the following notation: "Total $12,741.38." Plaintiff's Exhibit H, introduced at trial, is a folder containing invoices of individual sales for February 9, 1989. When the gross receipts from the invoices shown in Plaintiff's Exhibit H for the sale date of CT Page 2680 February 9, 1989, are totaled, they produce a sum of $10,464.04. The data contained in the plaintiff's Exhibit H is inconsistent with the data contained in the day book for February 9, 1989. Also, not shown on the day book for February 9, 1989, was a resale to Rance Carli for $199.95. See Plaintiff's Exhibit H.
Wayne Huck, plaintiff's accountant, testified that at the end of each month, he would record the gross receipts from the day book. He would deduct from the gross receipts the sales for resale for that month. Huck would then apply the sales and use tax percentage to that net amount to determine the sales tax.
Scott Soule, the tax examiner for the commissioner who conducted the audit of the plaintiff's business for the period in question, was assisted in the course of the audit by Marvin Hoffman and his son Scott Hoffman, owner of Hoffman's Gun Center, Inc. Soule was provided with the day books but no cash register tapes or sales invoices to document the sales listed in the day books. Since Soule had only the day books to inspect, he could not verify sales listed in those books as sales for resale.
Soule permitted the plaintiff to obtain resale certificates for those sales listed as sales for resale during this audit period. Soule accepted some resale certificates as evidence of valid resales and disallowed forty-six sales listed for resale due to lack of valid documentation. For example, six specific resale certificates submitted to Soule were rejected. One certificate rejected was from a gun collector. The other five were rejected as invalid because one dealer's state sales permit had expired and the other dealer had applied for and received a federal firearm license after the date of sale. Soule, however, did make some adjustments in the amount of the assessment based on those resale certificates he accepted as valid.
The plaintiff's basic position is that the auditor should have accepted the taxpayer's accounting method, that is, the use of the day book, with the accountant totalling [totaling] the gross receipts at the end of the month, backing out the sales for resale, and determining the sales and use tax on the resulting net gross receipts.
Section 12-426-23 of the Regulations of Connecticut State Agencies provides:
 Each seller and retailer as defined in Chapter 219 of the General Statutes (Sales and Use Tax) shall keep CT Page 2681 adequate and complete records of his business in this State showing:
 (1) The gross receipts from the sale or lease or (sic) tangible personal property or from sale of services, including both taxable and non-taxable items . . . .
 Such records shall include the normal books of account ordinarily maintained by the average prudent businessman engaged in the activity in question, together with all bills, receipts, invoices, cash register tapes or other documents of original entry supporting the entries in the books of account as well as all schedules or working papers used in connection with the preparation of tax returns.
 Failure to maintain such records will be considered evidence of negligence or intent to evade the tax and will result in the imposition of appropriate penalties. (Emphasis added.)
The commissioner has no quarrel with the plaintiff on how to compute the sales and use tax. Both agree that under the circumstances in this case, it was appropriate to determine the gross receipts for the period, subtract the resale items, and apply the sales and use tax rate to the net amount.
The dispute that developed between the commissioner and the plaintiff was on the documentation necessary to determine the sales made during the audit period. As we previously noted, variances existed between what was reported in the day book and what was ascertained from a review of invoices. Because a valid agency regulation has the force of a statute; Savage v. Aronson, 214 Conn. 256,267, 571 A.2d 696 (1990); the plaintiff was required by law, that is, 12-426-23 of the Regulations of Connecticut State Agencies, to keep records of each sale by retaining invoices, receipts, cash register tapes and other original documents of sale. The plaintiff, therefore, cannot now demand that the commissioner accept the day book entries at face value.
The plaintiff argues in its brief that its sales records meet the burden imposed on it by General Statutes 12-408(4)[1]. We disagree. The plaintiff, while concentrating on the record keeping requirements of 12-408(4), which is a consumer protection CT Page 2682 statute, does not address the record keeping procedures prescribed by 12-426-23 of the Regulations of Connecticut State Agencies. Section 12-408(4) requires the retailer to maintain records to show separately the actual price of an advertised sale for the protection of the consumer, whereas 12-426-24 of the regulations of Connecticut State Agencies is, a state mandate to sellers and retailers to keep adequate and complete business records for tax purposes. Plaintiff's records, specifically the day books that we have examined, do not list individual sales and any sales tax charged and thus fail to meet the record keeping requirements of12-408(4) or 12-426-23 of the Regulations of Connecticut State Agencies.
The plaintiff has failed to prove that its record keeping was adequate to form a basis to determine its tax liability. We find therefore that the bookkeeping records of the plaintiff did not comply with the statutory requirements placed upon the plaintiff as a seller or retailer, and the commissioner was not required to use only these records in conducting an audit.
Turning to the second issue raised in this case, the commissioner argues that the plaintiff failed to provide valid resale certificates, pursuant to General Statutes 12-410[2], to document that certain sales to individuals were for the purpose of resale.
The plaintiff argues that certificates of resale are unnecessary where the plaintiff's firearms purchasers are firearms dealers licensed by the Federal Bureau of Alcohol, Tobacco and Firearms (BATF). Plaintiff reasons that because a firearms seller must possess a federal license, a sale of a firearm to one possessing such a license is automatically a sale for resale, obviating the need for a state resale certificate.
When dealing with the necessity of proving a sale for resale, we start with the basic presumption that all gross receipts are subject to the sales tax. General Statutes 12-410(1). In order to overcome this presumption, in the absence of a resale certificate, the plaintiff must prove, through independent evidence, that the sale was indeed for resale. Since this action is an appeal from the commissioner, the plaintiff's proof that the sale was for resale is offered in the context of a trial de novo. Gallagher v. Commissioner of Revenue Services, 221 Conn. 166, 176;602 A.2d 996 (1992). CT Page 2683
The plaintiff's proof, in the absence of a resale certificate, consists solely of the fact that the purchaser is a federally licensed firearms dealer. Our question then is whether the federal firearms license held by a dealer is sufficient proof to meet the burden assigned the plaintiff in 12-410(1)[3]. In the absence of a resale certificate, in a trial de novo, the plaintiff was entitled to show, through the proper presentation of evidence, that the sale was in fact a sale for resale. Smedley Crane Services, Inc. v. Crystal, 43 Conn. Sup. 5, 9-10 (1994). This question requires us to examine the nature of the license of a federally regulated firearms dealer to determine whether a sale to such a dealer must be for resale and cannot be for any other purpose.
The statutory scheme dealing with the sale of firearms begins with the federal licensing laws. The Gun Control Act of 1968 (18 U.S.C. § 921 through 928) prohibits the selling or delivering of firearms without licensing by the federal government. Specifically, 18 U.S.C. § 923 (a) provides that "[n]o person shall engage in the business of dealing in firearms until he has filed an application with, and received a license to do so from, the Secretary [of the Treasury]." Although the Gun Control Act was enacted by Congress, all dealers in firearms, whether they are dealers in interstate sales or intrastate sales, must comply with federal licensing requirements. United States v. Fancher,323 F. Sup. 1069, 1071, (1971).
The purpose of the federal licensing of all gun dealers was fully discussed in Kreshesky v. Codd, 391 N.Y.S.2d 792, 793
(Supreme Court, 1976), with the court stating:
 Congress enacted the Gun Control Act of 1968 in response to the assassinations of prominent public figures and the civil disorders which took place throughout the nation during the late 1960's (U.S. Code Cong. Admin. News, 90th Cong., 2d Sess., 1968, p. 4413). The principal purpose of the Act was "to curb crime by keeping `firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency'" [Huddleston v. United States, 415 U.S. 814, 824, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974)]. It was expressly found by Congress "that there is a causal relationship between the easy availability of firearms other than a rifle or shotgun and juvenile and youthful criminal behavior, and that such firearms have been widely sold by federally licensed CT Page 2684 importers and dealers to emotionally immature, or thrill-bent juveniles and minors prone to criminal behavior" [Pub.L. 90-351, 901(a)(6)]. To remedy this situation, Congress provided for a more effective licensing system made applicable to those who commercially deal in firearms to restrict their availability.
The Gun Control Act was enacted by Congress to cure social ills, not to provide exemptions from state requirements[4].
On the state level, General Statutes 29-28 requires every person selling a pistol or revolver at retail to have a permit to sell[5]. The local permit to sell a pistol or revolver is so restricted that a seller must make a sale only in the "room, store or place described in the permit," and also display the permit in plain view within the location of sale described in the permit[6]. The seller of a pistol or revolver is required to keep a record of each sale in a book kept for such record keeping purposes. Each record must include the date of sale, the name, address and occupation of the purchaser, the caliber, make, model and manufacturer's number of the pistol or revolver and must be signed by the seller and the purchaser, each in the presence of the other[7].
The plaintiff's day books contained no information relating to these state statutory requirements that would have identified a sale of a gun as a sale to a licensed dealer for resale.
As we have previously stated, pursuant to 12-410[8], all gross receipts are subject to the sales and use tax until it can be shown otherwise. That section places upon the seller the burden to prove that a sale is not a sale at retail; that burden is relieved only if the seller, in good faith[9], takes from the purchaser a certificate reciting that the purchaser intends to resell the item at retail.
Having possession of a federal dealer's license, alone, does not guarantee that every firearm purchased by a dealer will be for resale. As the legislature noted in General Statutes 29-28[10], certain firearms may be sold or exchanged to a licensed gun dealer to enhance that purchaser's personal collection of firearms or for a hobby, rather than for the purpose of a resale.
In the present action, the plaintiff made the choice not to obtain a certificate of resale from the purchaser of a firearm, CT Page 2685 relying instead upon the federal license of the purchaser as an alternative to obtaining a resale certificate. This reliance was misplaced. There was no evidence, in the absence of a resale certificate, to show that the sales alleged by the plaintiff to be for resale, were in fact sales for resale. By not obtaining the resale certificate, plaintiff had the burden at this hearing to show that each particular sale came within the exemption and was not a sale at retail. General Statutes 12-410(1); Smedley Crane Service, Inc., supra, 9-10. The plaintiff has failed to overcome this burden.
Accordingly, plaintiff's appeal is dismissed.
Aronson, J.